UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

GOVERNMENT EMPLOYEES INSURANCE CO.,
GEICO INDEMNITY CO., GEICO GENERAL
INSURANCE COMPANY and
GEICO CASUALTY CO.,

                              Plaintiffs,             Docket No.:
                                                       19-cv-00728 (LJV)(HBS)

      -against-

MIKHAIL STRUT, M.D. a/k/a MIKHAIL
STRUTSOVSKIY, M.D., RES PHYSICAL
MEDICINE & REHABILITATION SERVICES, P.C.,
and CHERYLE HART, M.D.

                              Defendants.

_____

**MEMORANDUM OF LAW IN RESPONSE AND OPPOSITION TO
PLAINTIFFS' MOTION TO STAY DEFENDANTS' COLLECTIONS PROCEEDINGS**

Robert E. Knoer, Esq.
THE KNOER GROUP, PLLC
*Attorneys for Defendants*
424 Main Street, Suite 1820
Buffalo, New York 14202
Phone: (716) 332-0032
Fax: (716) 362-8748
Email: rknoer@knoergroup.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... iii.-v.

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF THE CASE ......................................................................1

STATEMENT OF FACTS ...........................................................................2

SUMMARY OF THE ARGUMENT .............................................................2

ARGUMENT ..............................................................................................5

I.      The Proper Standard on GEICO's Motion.............................................5

II.     GEICO Cannot Establish Irreparable Harm...........................................6

        A.      *The potential burdens of arbitration do not constitute irreparable harm..........6*

        B.      *There is no potential for inconsistent judgments, as the claims raised by GEICO in this action are distinct from those raised in arbitration...............................8*

        C.      *GEICO will not be harmed by participating in statutory arbitration................9*

        D.      *GEICO's complaint is with the no-fault system generally..............................10*

        E.      *Application of GEICO's proposed standard for irreparable harm is premature..12*

III.    GEICO Cannot Show a Serious Question Going to the Merits...............................13

        A.      *GEICO's motion is procedurally premature................................................13*

        B.      *GEICO has not offered sufficient evidence to support its claims.......................14*

IV.     The Balance of Hardships Does Not Decidedly Favor GEICO............................16

V.      The Public's Interest Does Not Weigh in Favor of an Injunction..........................18

VI.     The Case Before the Court is Materially Different Than Those Cases Cited by GEICO.19

VII.    If an Injunction is Issued, it Must Be Tailored to the Harm.................................21

VIII.   If GEICO is Granted an Injunction, it Must Post Security...................................23

IX.     This Court Should Delay Ruling Until the Second Circuit Rules in *Parisien* ...........24

CONCLUSION.........................................................................................24

PRAYER FOR RELIEF ..................................................................................25

<u>**TABLE OF AUTHORITIES**</u>

<u>**Federal Rules of Civil Procedure**</u>

Fed. R. Civ. P. R. 65 ....................................................................................4

Fed. R. Civ. P. R. 65(c)...........................................................................23, 24

<u>**State Statutes**</u>

N.Y. Ins. Law §§ 5101, et seq..........................................................................2

<u>**State Regulations**</u>

5 N.Y.C.R.R. § 65-3.9(b)…………………………………………………...23

5 N.Y.C.R.R. § 65-3.9(c)…………………………………………………...22

11 N.Y.C.R.R. §§ 65……………………………………………………………2

<u>**Case Law**</u>

<u>Supreme Court</u>

Renegotiation Bd. v. Bannercraft Clothing Co., Inc., 415 U.S. 1 (1974) .......................................7
Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7 (2008) ..................................6, 16, 18

<u>2d Cir.</u>

Allstate Ins. Co. v. Harvey Family Chiropractic, 677 Fed.Appx. 716 (2d Cir. 2017)....................7
Allstate Ins. Co. v. Mun, 751 F.3d 94 (2d Cir. 2014).........................................9, 20, 21
Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 594
F.3d 30 (2d Cir. 2010)..................................................................................5, 16
Jayaraj v. Scappini, 66 F.3d 36 (2d Cir. 1995) ...........................................................7
Kamerling v. Massanari, 295 F.3d 206 (2d Cir. 2002 ....................................................6, 13
Metro. Taxicab Bd. of Trade v. City of New York, 615 F.3d 152 (2d Cir. 2010).....................6, 18
Moore v. Consol. Edison Co. of New York, Inc., 409 F.3d 506 (2d Cir. 2005).......................5, 21
New York ex rel. Schneiderman v. Actavis PLC, 787 F.3d 638 (2d Cir. 2015) ...........................5
Oneida Nation of New York v. Cuomo, 645 F.3d 154, 164 (2d Cir. 2011) .................................16
Random House, Inc. v. Rosetta Books LLC, 283 F.3d 490 (2d Cir. 2002)..................................17
Tom Doherty Assoc., Inc. v. Saban Entm't, Inc., 60 F.3d 27 (2d Cir. 1995) ................................5

District Courts

Allstate Ins. Co. v. Avetisyan, 2018 WL 6344249 (E.D.N.Y. 2018) .................................... passim
Allstate Ins. Co. v. Elzanaty, 929 F.Supp.2d 199 (E.D.N.Y. 2013) .................................13, 14, 20
Asa v. Pictometry Intern. Corp., 757 F.Supp.2d 238 (W.D.N.Y. 2010)........................................17
Bank of America, N.A. v. Won Sam Yi, 294 F.Supp.3d 62 (W.D.N.Y. 2018)............................17
Donohue v. Mangano, 886 F.Supp.2d 126 (E.D.N.Y. 2012).........................................................23
GEICO v. Damien, E.D.N.Y. Docket No. CV 105409 (SLT)(JMA) (E.D.N.Y. 2011) ....12, 13, 20
Gov't Emples. Ins. Co. v. Mayzenberg, 2018 WL 6031156 (E.D.N.Y. 2018).........................7, 12
Gov't Emples. Ins. Co. v. Strutsovskiy, 2017 WL 4837584 (W.D.N.Y. 2017) ...........................13
Greenspan v. Allstate Ins. Co., 937 F.Supp. 288 (S.D.N.Y. 1996) .............................................19
Liberty Mut. Ins. Co. v. Excel Imaging, P.C., 879 F.Supp.2d 243 (E.D.N.Y. 2012)..................20
Main Street Baseball, LLC v. Binghamton Mets Baseball Club, Inc., 103 F.Supp.3d 244
(N.D.N.Y. 2015) .............................................................................................................................17
Quick v. Annucci, 2016 WL 4532152 (N.D.N.Y 2016).........................................................13, 19
State Farm Mut. Auto. Ins. Co. v. Parisien, 352 F.Supp.3d 215 (E.D.N.Y. 2018)............... passim
VoiceStream Wireless Corp. v. All U.S. Commc'ns, 149 F.Supp 2d 29 (S.D.N.Y. 2001)...........17


New York Court of Appeals

Aetna Life and Cas. Co. v. Nelson, 67 N.Y.2d 169 (Ct. App. 1996) ..............................................6
Walton v. Lumbermens Mut. Cas. Co., 88 N.Y.2d 211 (Ct. App. 1996) ........................................6


New York Appellate Division

Alfa Med. Supplies v. Geico Gen. Ins. Co., 38 Misc. 3d 134(A) (App. Term 2d Dep't 2013).....12
Continental Med. P.C. v. Travelers Indem. Co., 11 Misc. 3d 145 (A) (App Term 1st Dept.
2006). .............................................................................................................................................11
E. Acupuncture, P.C. v. Allstate Ins. Co., 61 A.D.3d 202 (2d Dep't 2009) ................................22
Mary Immaculate Hosp. v. Allstate Ins. Co., 5 A.D.3d 742 (2d Dep't 2004) ..............................11
Vladmir Zlatnick, M.D. P.C. v. Travelers Indem. Co., 12 Misc. 3d 128 (A) (App. Term.
1st Dep't 2006) ...............................................................................................................................11


New York Trial Courts

Autoone Ins. Co. v. Manhattan Heights Med., P.C., 2009 N.Y. Misc. LEXIS 2003 (Sup. Ct.
Queens Cty. 2009) ..........................................................................................................................20
Behavioral Diagnostics v. Allstate Ins. Co., 3 Misc. 3d 246 (Civ. Ct. Kings Co 2004)...............11
E. Coast Acupuncture, P.C. v. Hereford Ins. Co., 51 Misc. 3d 441 (Civ. Ct. Kings County

2016) ....................................................................................................................11

Fifth Ave. Pain Control Center v. Allstate Ins. Co., 196 Misc. 2d 801, 766 (Civ. Ct.
Queens Co. 2003)...............................................................................................12

GEICO Ins. Co. v. Williams, 2011 N.Y. Misc. LEXIS 305 (Sup. Ct. Nassau Cty. 2011) ............20

Healing Hands Chiropractic, P.C. v. Nationwide Assurance Co., 5 Misc. 3d 975
(NY Co. 2004) ...................................................................................................11

Jesa Med. Supply, Inc. v. Geico Ins. Co., 887 N.Y.S.2d 482 (Civ. Ct. Kings Co. 2009)..............11

Pavlova v. Allstate Ins. Co., 2016 NY Slip Op 26123 (Civ. Ct. Kings Co. 2016) ......................11

St. Paul Travelers Ins. Co. v. Nandi, 2007 N.Y. Misc. LEXIS 4417 (Sup. Ct. Queens Cty.
2007) ................................................................................................................20

**Secondary Sources**

Informal Opinion of The Office of General Counsel representing the position of the
New York State Insurance Department, March 27, 2001 .............................................8

*Impairments and Insolvencies*, National Organization of Life & Health Insurance Guaranty
Associations, https://www.nolhga.com/factsandfigures/main.cfm/location/insolvencies (last
visited Oct. 2, 2019)..........................................................................................24

Robert McDonald and Anna Paulson, *AIG in Hindsight*, 29 J. OF ECON. PERSP. 81 (2015) .........23

## PRELIMINARY STATEMENT

Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co. (collectively "Plaintiffs" or "GEICO") brought this action seeking to claw back previously paid insurance benefits and for a declaration that GEICO was not obligated to pay any pending claims for benefits. [Dkt. 1]. Defendants filed a motion to dismiss the Complaint, which is pending. [Dkt. 14]. No answer has been filed. Plaintiffs filed this motion seeking a preliminary injunction. [Dkt. 21].

Plaintiffs' motion fails to meet the standard for a preliminary injunction. GEICO presents no medical evidence or expert analysis. GEICO's pending motion, if granted, would bar Defendants from seeking payments owed by GEICO during the pendency of this litigation (circumventing the design of the no-fault system, which prioritizes prompt and efficient payments and allows insurers to recover those payments at the conclusion of a successful suit). Defendants would either be delayed in collecting money due for services rendered or have to cease treating GEICO patients pending the determination of the suit.

## STATEMENT OF THE CASE

GEICO filed this Complaint against Dr. Strut, Dr. Hart, and RES on June 4, 2019, alleging a broad and complicated scheme to defraud GEICO through claims for services rendered to GEICO-insured patients under New York State's no-fault system. [Dkt. 1]. This action bears great resemblance to the one instituted in 2012 by GEICO against Dr. Strut and RES, among others. GEICO seeks to reclaim benefits already paid to Defendants, as well as a declaratory judgment that GEICO has no liability to Defendants for other claims. [Dkt. 1 ¶¶ 1-2]. GEICO specifically alleges that certain services billed for were not provided to patients, were not medically necessary, or were submitted with improper billing codes. [Dkt. 1 ¶ 2]. GEICO also alleges that some services were provided by independent contractors and not RES and its employees. [Dkt. 1 ¶ 2].

Importantly, GEICO does not allege that Dr. Strut or Dr. Hart lack the required license to practice medicine and provide the services billed for, nor does GEICO allege that RES was not properly incorporated as a professional services corporation. [Dkt. 1].

Defendants moved to dismiss on July 10, 2019. [Dkt. 14].  On August 15, 2019 GEICO moved for an injunction staying any attempts by Defendants to collect on benefits owed through either arbitration or litigation as provided for by New York State law. [Dkt. 21].

## STATEMENT OF FACTS

In New York State, compensation arising from automobile accidents that do not result in serious injuries are governed by "no-fault," a system designed by the legislature to ensure prompt and efficient compensation for victims. N.Y. Ins. Law §§ 5101, et seq. Under this system, a victim can seek medical treatment from a healthcare provider who then bills the insurer directly. 11 N.Y.C.R.R. §§ 65, et seq. The insurer must then pay the claim or deny it. *Id.* If the applicant (here, the healthcare provider) disputes the insurer's determination, they can commence litigation or request arbitration. *Id.* Once the applicant commences litigation or requests arbitration, interest begins to accrue on any payment due by the insurer. *Id.*

Defendants have submitted claims for reimbursement of benefits provided to GEICO insureds. Affidavit of Strut at ¶ 9. GEICO has sought verification of those claims through the no-fault verification process. *Id.* at ¶¶ 22-29. Defendants have fully cooperated in the verification process. *Id.* at ¶¶ 29-31. GEICO denied many of those claims. *Id.* at ¶ 34. Defendants, following the procedure established in the no-fault law, have submitted those denials for resolution through arbitration. *Id.* at ¶¶ 38-47.

## SUMMARY OF THE ARGUMENT

A party must satisfy a high bar to be granted a preliminary injunction. That bar is even higher when the injunction would alter, as opposed to maintain, the status quo. The injunction

must also favor the public's interest.

GEICO cannot establish the key element required for a preliminary injunction, that it will suffer irreparable harm. The costs in time, money, and other resources of participating in arbitration do not constitute irreparable harm. Nor is there a risk of inconsistent judgments as the allegations made in this court are distinct from GEICO's defenses to payment in arbitrations. The system for adjudicating disputes over no-fault claims is thorough and fair, and participation will not harm GEICO. Even if the potential for different decisions in arbitrations and this court could be considered to rise to the level of irreparable harm, GEICO has brought this motion far too early in the proceedings. The alleged harm is purely speculative.

Similarly, GEICO cannot show a serious question going to the merits. In support of its motion, GEICO submits only the declaration of Robert Weir and a Memorandum of Law. GEICO does not submit any medical expert opinion as to medical necessity or proper coding, nor does Mr. Weir's declaration address either of those issues. Because Defendants have not yet answered the Complaint and Plaintiffs have not sufficiently addressed the issues of medical necessity or proper coding there is not enough information before the court to consider whether GEICO's allegations present a serious question. They have done little more than dust off and re-present the allegations made in 2012 against Dr. Strut and RES.

GEICO cannot establish that the balance of hardships tips decidedly in their favor. The hardships prong of the Second Circuit's alternative preliminary injunction standard sets a high bar to compensate for a lowered bar on the serious questions prong. When taken together, they present just as strict a standard as the traditional "likelihood of success on the merits" standard.

If anywhere, the balance of hardships tips in favor of Defendants. Both parties suffer the hardships associated with litigation. But it is only Defendants who have provided goods and

services in furtherance of treatment for which they seek to be reimbursed.

The public's interest does not favor an injunction. An injunction would harm the interests of non-party patients who rely on Defendants for medical treatment. An extended interruption to reimbursement will likely prevent Defendants from treating GEICO patients. It would also take the disputed claims out of the no-fault system which the New York State legislature instituted as a compromise in the best interests of the public.

The caselaw that GEICO relies on is distinguishable from the case at hand. Almost none of it is controlling precedent for this court. The cited case most analogous to the one at hand remains distinguishable and is currently pending appeal at the Second Circuit on grounds similar to Defendants' arguments. *See State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F.Supp.3d 215 (E.D.N.Y. 2018) (Notice of Appeal filed December 21, 2018). Another factually similar case, which Plaintiffs neglected to cite, resulted in the denial of a preliminary injunction and supports Defendants' position here. *See Allstate Ins. Co. v. Avetisyan*, 2018 WL 6344249 (E.D.N.Y. 2018).

If an injunction is issued, it must be tailored to protect Plaintiffs against potential harm without unnecessarily prejudicing Defendants. The injunction Plaintiffs have requested is unnecessarily broad and would result in Defendants being unable to recover interest on any claims eventually determined to be owed. Any injunction issued should be limited to preventing the parties from actively arbitrating or litigating claim disputes, without barring Defendants from taking the actions required by the no-fault rules to file claims and establish a right to interest.

Similarly, if an injunction is issued GEICO must post security as required by Federal Rules of Civil Procedure 65. Defendants will suffer significant financial harm as a result of a stay. The intent of the security requirement of F.R.C.P. Rule 65 is to ensure that an enjoined party can be made whole at the conclusion of a wrongfully issued injunction. Posting a bond to secure the

principal and interest that may be owed owed to Defendants is required.

The Second Circuit has not yet issued a full opinion directly on-point to the issues arising from this motion. A case that will provide an opportunity to do so, and which Plaintiffs have relied upon in their arguments, is pending appeal. *See Parisien*. Argument in that case is scheduled for November 19, 2019. *See id.*, 2d Cir. Docket No. 18-3786, Case Calendaring order entered September 11, 2019. It would be in the best interests of all parties, and in the interest of the efficiency of the court, to reserve ruling on Plaintiffs' motion for a stay until the Second Circuit has made its ruling which could control the outcome of Plaintiff's motion.

## ARGUMENT

### I.    The Proper Standard on GEICO's Motion

In order to establish entitlement to a stay, GEICO is required to show both irreparable harm absent relief, and either a likelihood of success on the merits or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in its favor. *See, e.g., Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d. Cir. 1979)).

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). In the Second Circuit, movants have been required to meet an even higher standard where "an injunction will alter, rather than maintain, the status quo." *Tom Doherty Assoc., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33 (2d Cir. 1995). Specifically, the movant must "make a 'strong showing' of irreparable harm." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) quoting *Doe v. N.Y. Univ.*, 666 F.2d 761, 773 (2d Cir. 1981).

The stay that Plaintiffs seek would alter the status quo. The status quo here is that the rules

of no-fault benefits apply to Defendants and to GEICO, rules which include a statutory system of arbitration for benefits owed for services rendered. A stay would have a profound negative impact on Defendants' abilities to continue operating as a business and offering treatment to GEICO insureds. While Defendants may be entitled to recover interest on payments that GEICO may avoid during the stay, that future payment does not affect the ongoing costs of running the business or the loss in economic opportunity if Defendants are forced to cease treating GEICO insureds pending the outcome of this action.

Further, GEICO does not address the requirement that "[i]n order to justify a preliminary injunction, a movant must demonstrate…that the public's interest weighs in favor of granting an injunction." *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010) (citing *Winter v. National Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). The requested injunction would be contrary to the public interest, and specifically detrimental to GEICO's own insureds who rely on the medical services provided by Defendants. *See* Affidavit of Strut at ¶¶ 55-61. On a broader level, an injunction would be against the public interest because it would allow GEICO to avoid its obligations under the no-fault system, a complete statutory scheme which was created by the state legislature to supplant the common law and provide efficient compensation for non-serious injuries. *See Walton v. Lumbermens Mut. Cas. Co.*, 88 N.Y.2d 211 (Ct. App. 1996); *see also Aetna Life and Cas. Co. v. Nelson*, 67 N.Y.2d 169 (Ct. App. 1986).

## II.   GEICO Cannot Establish Irreparable Harm

### A. The potential burdens of arbitration do not constitute irreparable harm

"To establish irreparable harm, a party seeking preliminary injunctive relief must show that 'there is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" *Kamerling v. Massanari*,

295 F.3d 206, 214 (2d. Cir. 2002). The Supreme Court of the United States stated that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24 (1974).

GEICO relies on a handful of cases that have carved out an exception to that rule. *See, e.g. Gov't Emples. Ins. Co. v. Mayzenberg*, 2018 WL 6031156 (E.D.N.Y. 2018). Of these cases, five were in the Eastern District of New York, one in the Western District of New York (the case involving substantially the same parties as the case at hand) and two were in New York State Supreme Court. [*See* Dkt. 21-1 at ii]. None of these cited cases are controlling precedent in the Western District of New York, and the cited cases are generally inconsistent with the position of the Second Circuit on the issue of irreparable harm.

Plaintiffs argue that their cases stand for the proposition that "…wasting time and resources in arbitrations…constitute[s] the irreparable harm necessary to support similar stays and injunctions." [Dkt. 21-1 at 8]. Contrary to Plaintiffs' position, the Second Circuit has followed the position taken by the United State Supreme Court: "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). The Second Circuit relied on that position to overturn a preliminary injunction granted by the Eastern District of New York enjoining a defendant no-fault provider from filing arbitration proceedings against a plaintiff insurer during the pendency of an action alleging fraudulent claims and seeking both monetary damages and declaratory relief. *See Allstate Ins. Co. v. Harvey Family Chiropractic*, 677 Fed.Appx 716, 717-18 (2d Cir. 2017). The Eastern District of New York has approved of reliance on *Harvey* even though it was a summary order. *See Allstate Ins. Co. v. Avetisyan*, 2018 WL 6344249 at *2 (E.D.N.Y. 2018) (noting that summary orders by the Second

7

Circuit are "highly persuasive" authorities).

B. There is no potential for inconsistent judgments, as the claims raised by GEICO in this action are distinct from those raised in arbitration

GEICO claims that it will suffer irreparable harm by "wasting time and resources in arbitrations with awards that might eventually be, at best, inconsistent with judicial rulings…" [Dkt. 21-1 at 8]. As set forth above, the costs in time and resources spent in arbitration do not establish the irreparable harm necessary to support a preliminary injunction. But, more directly, there is no potential for inconsistency between the findings of this court and the findings of the arbitrators.

The allegations made in the Complaint here describe a broad "fraudulent scheme," with references to "virtually all of the Insureds in the claims identified," "many of the claims," the information "virtually always" provided to insureds who reported to hospitals, injuries that "virtually none of the Insureds" suffered from, and other similarly vague points. [Dkt. 1 ¶¶ 52-58]. By contract, the claims in arbitration are to specific and individual findings of medical necessity or proper coding. Importantly, GEICO makes no allegations of fraud in defense to the pending arbitrations. Affidavit of Strut at ¶ 47. This is despite the fact that an insurer may argue fraud as a defense when brought into a no-fault arbitration. [*See* Dkt. 23-2 (Informal Opinion of the Office of General Counsel representing the position of the New York State Insurance Department dated March 27, 2001)].

Mr. Weir asserts that there is "a risk of multiple inconsistent judgments" and asserts the inability of insurers such as GEICO to present complex fraud claims and defenses in the context of New York's expedited no-fault arbitration system. [Dkt. 21-2.] Mr. Weir does not identify what specific inconsistent judgments he is referencing. Each individual claim submitted to arbitration references a separate presentation of a patient. No two arbitrators review the same claim for

medical necessity or proper coding. Each individual claim has to be analyzed to determine whether the treatment at that time for that patient was medically necessary and properly coded.

There is no risk of inconsistent judgments. GEICO claims that the Defendants' practice constitutes a fraud because each individual instance of a claim submittal is fraudulent and taken overall they establish a pattern sufficient to support RICO. [Dkt 1 ¶¶ 326-332]. The judgment GEICO seeks is addressed to the overall practice of Defendants. GEICO asserts in their papers, that is not something that the no-fault system is addressing. [Dkt. 21-2 at ¶ 16].

Where an insurer institutes an action alleging a pattern of fraud across discrete no-fault claims but does not allege such fraud in related no-fault arbitrations or civil actions, "there is simply no danger of inconsistent determinations. Any harm to Plaintiffs resulting from adverse awards in [the individual arbitrations] can be adequately remedied by future money damages." *Avetisyan* at *4. The court's ruling in *Avetisyan* is especially persuasive given that court's focus on the use of the term "routinely" in the complaint, which is analogous to GEICO's reliance on "virtually" in its Complaint. *See id.*

C. GEICO will not be harmed by participating in statutory arbitration

Plaintiffs argue that the arbitration procedures put in place by the state legislature are in some way unfair to them, and thus they should be permitted to forego that required arbitration. This confuses the issues: Plaintiffs are free to continue litigating their claims against Defendants if determined to have been properly brought in this court, but the question of whether no-fault benefits are due for individual claims should be brought before an arbitrator as provided for by law. These two systems can work in parallel, as they were designed to do, "…allow[ing] insurers to actively combat fraud without impairing the system of prompt insurer reimbursement." *Allstate Ins. Co. v. Mun*, 751 F.3d 94, 99-100 (2d Cir. 2014) (discussing an informal letter opinion from

the New York State Insurance Department clarifying that the no-fault arbitration system contemplates litigation to recover improperly paid benefits). GEICO can make the type of broad claims that GEICO is alleging in this court while simultaneously processing the issue of individual no-fault benefits in arbitration or individual civil actions, fulfilling the dual goals of prompt reimbursement for services rendered and safeguarding against fraud.

Mr. Weir asserts in paragraph 15 of his declaration that the New York State No-Fault arbitration system "generally contemplates no substantive discovery in advance of the hearing." [Dkt. 21-2 ¶ 15]. Mr. Weir's affidavit purposely ignores the entire significant verification process of the no-fault system that precedes the ability of a provider to even submit a claim to arbitration. In that verification system, insurers have a wide range of tools available to seek information on not only the claim itself but on the provider's practice. *See* Affidavit of Strut at ¶¶ 29-30. Insurers such as GEICO can and do take depositions of providers including inquiring into their practice generally beyond the individual claim. *Id.* Insurers can and do have patients examined by third-party physicians. *Id.* at ¶ 26.

Mr. Weir at paragraph 16 of his declaration asserts that "no-fault arbitrators generally refuse to permit any discovery with respect to patters of treatment practices beyond the discrete claim or claims before them in a given hearing." [Dkt. 21-2 ¶ 16]. Mr. Weir cites to no authority for the statement, shows no specific arbitrator denial of a request for discovery, and shows no evidence or indication that GEICO has even attempted to assert fraud as a defense in the no-fault system. His bold statement appears without evidence and his declaration does not even establish the basis for his ability to make such a statement.

D. GEICO's complaint is with the no-fault system generally

While Plaintiffs malign and belittle the no-fault arbitration system, claims submitted to the

arbitrators are reviewed using long-established standards. On the issue of fee schedules, "An insurer who raises a fee schedule defense 'will prevail if it demonstrates that it was correct in its reading of the fee schedules.'" *Jesa Med. Supply, Inc. v. Geico Ins. Co.*, 2009 NY Slip Op. 29386, 25 Misc.3d 1098, 887 N.Y.S.2d 482 (Civ. Ct. Kings Co. 2009). 25. "It is the insurer's burden to prove that the provider's fees are in excess of the applicable fee schedule." *E. Coast Acupuncture, P.C. v. Hereford Ins. Co.*, 51 Misc. 3d 441 (Civ. Ct. Kings County 2016); *Pavlova v. Allstate Ins. Co.*, 2016 NY Slip Op 26123 (Civ. Ct. Kings County 2016). "In order to prevail in its fee schedule defense, the insurer must demonstrate by competent evidentiary proof that the provider billed in excess of the applicable fee schedule." *Continental Med. P.C. v. Travelers Indemnity Co.*, 11 Misc. 3d 145 (A) (App Term 1 Dept. 2006).

For the issue of medical necessity, "[a]n applicant establishes 'a showing of their entitlement prima facie to judgment as matter of law by submitting evidentiary proof that the prescribed statutory billing forms had been mailed and received and that payment of no-fault benefits were overdue.'" *Mary Immaculate Hosp. v. Allstate Ins. Co.*, 5 A.D.3d 742 (2nd Dept. 2004)." "Once an applicant has established a prima facie case, the burden is on the insurer to prove the treatment was not medically necessary. *Behavioral Diagnostics v. Allstate Ins. Co.*, 3 Misc. 3d 246, 248 (Civ. Ct., Kings Co. 2004)." "A denial claiming lack of medical necessity must be supported by a peer review, IME report or other competent medical evidence which sets forth a clear factual basis and medical rationale for denying the claim." *Healing Hands Chiropractic, P.C. v. Nationwide Assurance Co.*, 5 Misc 3d 975, 976 (NY Co., 2004)." "The Respondent must establish a detailed factual basis and a sufficient medical rationale for its position that the medical service was not medically necessary." *Vladimir Zlatnick, M.D. P.C. v. Travelers Indem. Co.*, 12 Misc.3d 128(A), 2006 NY Slip Op 50963 (U) (App Term 1st Dept. 2006). "Once the respondent

presents sufficient evidence establishing lack of medical necessity, the burden shifts back to the applicant to present its own evidence of medical necessity." *Alfa Med. Supplies v. Geico Gen. Ins. Co.*, 38 Misc. 3d 134(A) (App. Term, 2d Dept., 2013)." "To find treatment or services are not medically necessary, it must be reasonably shown by medical evidence, in consideration of the patient's condition, circumstances, and best interest of the patient, that the treatment or services would be ineffective or that the insurer's preferred healthcare treatment or lack of treatment would lead to an equally good outcome." *Fifth Ave. Pain Control Center v. Allstate Ins. Co.*, 196 Misc. 2d 801, 766 (Civ. Ct. Queens Co. 2003)."

Allowing the parties to continue utilizing the arbitration system as prescribed by law will not give a blank check to Defendants or compel GEICO to pay for dubious claims without a second glance. It will provide for a full and fair analysis of the individual claims submitted to a neutral arbitrator who will rule on these questions based on these well-established and thorough standards. And, should GEICO prevail in the current litigation, it would be entitled to fully recoup any payments found to be unnecessary or inappropriate.

The system GEICO seeks relief from is the compromise system the New York State legislature designed. This court should respect that to the greatest extent possible. GEICO's complaints are more properly brought to the state legislature.

E. Application of GEICO's proposed standard for irreparable harm is premature

The rule Plaintiffs draw from their cited cases is not properly applied to the case at hand. In *Mayzenberg*, the court found that the specific irreparable harm stemmed from "…the frustration of the declaratory judgement relief for which GEICO is likely to succeed on the merits…" Mayzenberg at *5 (emphasis added). Again in *Damien*, the court's grant was based on their finding that GEICO "established a likelihood of success on their claims against Defendants." *GEICO v.*

*Damien*, E.D.N.Y. Docket No. CV 105409 (SLT)(JMA) at Docket No. 63. In *Elzanaty*, the court noted that it had already denied Defendants' motion to dismiss for failure to state a claim. *Allstate Ins. Co. v. Elzanaty*, 929 F.Supp.2d 199, 222 (E.D.N.Y. 2013). And this court, in litigation involving substantially the same parties as the case at hand, granted a stay only after denying the Defendants' motion for summary judgment. *Gov't Emples. Ins. Co. v. Strutsovskiy*, 2017 WL 4837584 (W.D.N.Y. 2017).

The procedural posture of the case at hand is materially different from the majority of cases cited by GEICO in support of its position. Here, Defendants have not yet answered and the court has not ruled on the pending F.R.C.P. Rule 12(b)(6) motion to dismiss. The sole basis for finding irreparable harm as a result of denying the stay of arbitration is based on GEICO's contention that it will succeed in this litigation. "…[I]rreparable harm must be shown to be actual and imminent, not remote or speculative." Kamerling at 214, citing *Rodriguez ex rel Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) and *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989). Pre-answer, the potential harm of inconsistent results or a waste of resources in undergoing both litigation and arbitration cannot be anything more than speculative. Where a defendant has not yet answered, "…the Court cannot ascertain plaintiff's likelihood of success, or whether he has otherwise met the standard for issuance of preliminary injunctive relief." *Quick v. Annucci*, 2016 WL 4532152 at *6 (N.D.N.Y. 2016).

## III.   GEICO Cannot Show a Serious Question Going to the Merits

### A. GEICO's motion is procedurally premature

For similar reasons as those stated at II(E), GEICO cannot show a serious question going to the merits of its claims to make them a fair ground for litigation. Prior to an answer from Defendants, GEICO is asking this court to analyze its allegations in a vacuum. It is simply

premature for GEICO to seek such a stay. For example, the court in *Elzanaty* found for the insurer on the issue of a sufficiently serious question only after the plaintiffs had adequately alleged a scheme of fraudulent activity <u>and</u> the court had already denied Defendant's post-answer motion to dismiss. *Elzanaty* at 222.

Plaintiffs' Complaint is essentially a rehashing of some portions of the allegations made in 2012 against Dr. Strut and RES. [*See* Dkt. 1]. In many places it is cut-and-pasted, word-for-word from the prior complaint. *Id.* Significant portions are dedicated to discussion of the prior lawsuit and of the past, unrelated conduct of Dr. Strut and Dr. Hart. *Id.* Portions that purport to address relevant recent actions are presented in repetitive boilerplate with only names, dates, and locations changed. *Id.* GEICO has not presented a serious question going to the merits; it has merely put forward conclusory allegations based on its own assumptions about Dr. Strut and Dr. Hart and the history of litigation between GEICO and RES.

B. GEICO has not offered sufficient evidence to support its claims

Most importantly, the claims that GEICO has made are not sufficiently supported by its own submissions. GEICO failed to submit any admissible evidence in support to its claim that the treatment provided to its insured was medically unnecessary. GEICO failed to submit any affidavits, information, or evidence from any specific patient asserting, much less establishing, that the treatment provided by Defendants was not medically necessary, appropriate, effective, and performed as described. GEICO has not submitted to the court any medical expert opinion as to medical necessity or proper coding. The declaration submitted in support of their motion is by a "claims manager" and is limited to a description of the arbitration process. [Dkt. 21-2]. Mr. Weir's declaration does not establish his length of time employed at GEICO, his interaction with the Defendants or any of the arbitrations, or in any way establishes his authority for making the

declaration that he issues other than his position at GEICO. Plaintiffs ask this court to rely on their lay conclusions of an employee of Plaintiffs to hold that their Complaint raises a "serious question going to the merits," which would include the question of medical necessity.

As an example, GEICO has asserted in an overarching way that prolotherapy is never an appropriate treatment. [Dkt. 1 ¶¶ 255-275]. This is belied by GEICO's own experts and by the affidavit of Dr. Carinci submitted in opposition to the motion. Affidavit of Carinci at ¶¶ 57-58. GEICO has asserted that various other neurological testing is not medically necessary or is ineffective. [Dkt. 1 ¶ 205-254]. GEICO can and has submitted medical evidence and expert opinion in the no-fault system to support those claims. They have done so, and that evidence has been rejected by the arbitrators. Exhibit 9. Though not suggesting that the arbitrators' findings are an estoppel to this court, under the circumstances of this case they do establish that following a verification process and arbitration process in which the insurer submits significant evidence in opposition—including peer-review doctor reports—arbitrators that individually submitted claims were not fraudulent and in many instances were appropriate in total.

The "proof" that GEICO references in terms of fraudulent submittals is simply a chart showing the claim forms as submitted and the amount claimed. [Dkt 1-3]. GEICO does not submit any medical opinion or evidence to establish that any of those claims were inappropriate or not properly billed, were not medically necessary, or had other deficiencies. Other than claiming that Dr. Strut is a "bad person" GEICO asserts no direct evidence that would establish that there are "massive" fraudulent submittals.

In contrast, Defendants have submitted the affidavit of Dr. Adam Carinci, who disputes the accuracy of GEICO's allegations in detail based upon his medical expertise. Affidavit of Carinci at ¶¶ 28-70.

**IV.     The Balance of Hardships Does Not Decidedly Favor GEICO**

GEICO claims in its memorandum of law that the balance of equities "tips" in its favor. This phrasing obscures the true standard set out by the Second Circuit. The language used repeatedly by the Second Circuit is "…a balance of the hardships tipping <u>decidedly</u> in favor of the moving party." *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011) (quoting *Monserrate v. N.Y. State Senate*, 599 F.3d 148, 154 (2d Cir. 2010) (emphasis added)).

The Second Circuit thoroughly analyzed its standards for a preliminary injunction following the Supreme Court's ruling in *Winter. Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008). In *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.* the Second Circuit rejected the argument that *Winter* had eliminated the "serious questions" standard. *See Citigroup Global Markets, Inc.* at 34-38. The standard is intended as an alternative to establishing "likelihood of success on the merits" and should be used in cases where the district court cannot determine the likelihood of success with certainty "but where the costs outweigh the benefits of not granting the injunction." *Id.* at 35. The court emphasized its prior language of "decidedly" in noting that the overall burden of the two prong serious questions and balance of hardships test is no lighter than the "likelihood of success" standard. *Id.* citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). Because the "serious questions" prong presents a much lower bar for movants to meet than the "likelihood of success" standard, it logically follows that the bar for the "balance of hardships" prong must be set high in order to result in an overall burden that is at least equal to that of the "likelihood of success" standard.

The balance of hardships does not tip "decidedly" in GEICO's favor; if it tips anywhere, it is in favor of Defendants. An injunction would allow GEICO to withhold payment for services rendered by Defendants until the conclusion of litigation. Leaving Defendants without access to

the arbitration process, which was created by the legislature to ensure prompt payment to providers as a tradeoff for protecting insurance companies like GEICO from defending against claims for smaller injuries, may drastically impact Defendants' ability to remain in practice. Affidavit of Strut at ¶¶ 54-61. This threat to Defendants' business weighs heavily against granting an injunction. *See Random House, Inc. v. Rosetta Books LLC*, 283 F.3d 490, 492 (2d Cir. 2002) (denying preliminary injunction where non-moving defendant had reasonable concern that such injunction could put it out of business); *VoiceStream Wireless Corp. v. All U.S. Commc'ns*, 149 F.Supp.2d 29, 38 (S.D.N.Y. 2001) (balance of hardships favored defendant where hardship to plaintiff was the cost of investigation and litigation while potential hardship to defendant was ceasing operations); *cf. Bank of America, N.A. v. Won Sam Yi*, 294 F.Supp.3d 62, 81 (W.D.N.Y. 2018) (finding that risk of closing business did not tip in defendants' favor where the preliminary injunction sought to bar defendants from disposing of secured collateral).

Defendants do not need to show that the stay would effectively shut down operations, because "major disruption of a business can be as harmful as its termination…" *Asa v. Pictometry Intern. Corp.*, 757 F.Supp.2d 238, 244-45 (W.D.N.Y. 2010) (quoting *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1186 (2d Cir. 1995)). Although Defendants could recover interest on the payments for services rendered, that potential interest would not be sufficient to negate the hardship. *See Main Street Baseball, LLC v. Binghamton Mets Baseball Club, Inc.*, 103 F.Supp 3d 244, 260 (N.D.N.Y. 2015) (where plaintiff sought preliminary injunction to enjoin sale of baseball team, and argued that money damages would be sufficient to compensate defendants if plaintiffs were unsuccessful, court held that the balance of hardships on that point tipped only "ever so slightly" in plaintiffs' favor).

This issue is highlighted in the flawed reasoning of the court in *State Farm Mutual*

*Automobile Insurance Company v. Parisien*, a case similar to the one at hand and which is currently awaiting oral arguments on appeal to the Second Circuit. *State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F.Supp 3d 215 (E.D.N.Y. 2018). The District Court there gave only a passing glance to the issue of balance of hardships, which as argued above is essential to the Second Circuit's alternative to the "likelihood of success" test. The court relied on its finding of irreparable harm, a distinct section of the preliminary injunction standard, to hold that the balance of hardships favored plaintiffs. Parisien at 234-235. The court reasoned "If the preliminary injunction is granted and State Farm fails to prove its claims, then, at worst, Defendants' recovery of the no-fault benefits to which they are entitled will be delayed; all Defendants can hope for in pursuing their parallel state lawsuits and arbitrations is to accelerate their receipt of benefits to which they are already entitled." *Id.* It is difficult to understand exactly how this "tips decidedly" in the insurer's favor, especially since both parties are expending resources in litigation. This extremely limited analysis fails to appreciate that defendant medical providers incur costs in the provision of care to patient insureds; while the benefits are delayed by the stay, the providers are out-of-pocket for those costs. In fact, a stay may cause Defendants to cease treating GEICO patients at all pending a final outcome of the litigation, harming not only Defendants but the non-party patients.

## V.    The Public's Interest Does Not Weigh in Favor of an Injunction

"In order to justify a preliminary injunction, a movant must demonstrate…that the public's interest weighs in favor of granting an injunction." *Metro. Taxicab Bd. of Trade* at 156, citing *Winter v. Nat. Res. Def. Council, Inc.* Plaintiffs presented no argument in their motion that the requested injunction would favor the public's interest. While the injunction would favor GEICO's private interest by allowing it to withhold payment due for services rendered, it would result in harm to the interests of the patients of Defendants: GEICO's own insureds. *See* Affidavit of Strut

18

at ¶¶ 54-61.

It is in the public's interest to allow these claims to be processed as intended by the no-fault system. The no-fault process was created by the legislature "…in order to provide a more efficient means for adjusting financial responsibilities arising out of automobile accidents." *Nelson* at 175. "The purpose of the no-fault insurance law was to institute an inexpensive, efficient method of compensating accident victims." *Greenspan v. Allstate Ins. Co.*, 937 F.Supp. 288, 294 (S.D.N.Y. 1996) citing *Montgomery v. Daniels*, 38 N.Y.2d 41 (Ct. App. 1975). This system only functions if providers who accept patients with no-fault benefits are assured of a quick and efficient reimbursement process. The legislature did not intend for the burden of medical costs to be borne by the doctors themselves as they await the conclusion of complicated federal litigation commenced by insurers who are unsatisfied with the remedy granted to them by law. Erecting additional barriers to reimbursement and restricting the ability of accident victims to obtain medical treatment is a potential public harm. *See Greenspan* at 294.

**VI.     The Case Before the Court is Materially Different Than Those Cases Cited By GEICO**

As stated at II(E), the case at hand is distinct from the cases GEICO relies upon because of its procedural posture and the timing of GEICO's motion. The very nature of the Plaintiffs' argument is also distinct from those of the plaintiffs in almost every cited case.

At issue in this dispute is the medical necessity and proper coding of treatments provided by Defendants for which GEICO is responsible to pay. There is no allegation that Dr. Strut is not a licensed medical professional, that Dr. Hart is not a licensed medical professional, or that RES was improperly incorporated. [Dkt. 1]. Plaintiffs rely on cases that involve much more clear-cut questions of fraud, which would certainly be better candidates for imposition of preliminary injunctive relief.

19

Most of the no-fault cases cited by GEICO involve allegations of fraudulently incorporated entities seeking reimbursement to which they could never be entitled under law. *See Elzanaty*; *Autoone Ins. Co. v. Manhattan Heights Med., P.C.*, 2009 N.Y. Misc. LEXIS 2003 (Sup. Ct. Queens Cty. 2009); *Damien*; *Liberty Mut. Ins. Co. v Excel Imaging, P.C.*, 879 F. Supp 2d. 243 (E.D.N.Y. 2012); *St. Paul Travelers Ins. Co. v. Nandi*, 2007 N.Y. Misc. LEXIS 4417 (Sup. Ct. Queens Cty. 2007). Cases involving questions of fraudulent incorporation are materially different than those alleging fraud through a lack of medical necessity or improper coding of the treatment by a provider who is otherwise entitled to reimbursement. The critical distinction where an insurer alleges fraudulent incorporation is that the determination of that question necessarily affects each and every individual arbitration or action because it may hold that the medical provider is ineligible for reimbursement under the circumstances. *See* Avetisyan at *3 (distinguishing that case from *Elzanaty* and *Manhattan Heights*). The issues before the arbitrators addressing GEICO's denials of Defendant's claims are all distinct: only one arbitrator is dealing with any claim and the questions of medical necessity and proper billing for the treatment provided to that patient and that patient alone. There is no determination to be made by the arbitrator of medical necessity or proper coding that would have any effect on any other pending claim.

One case cited by GEICO involved the insurer seeking only to claw back previously paid benefits, without addressing the issue of benefits owed for claims made but not paid, denied, or otherwise responded to. *Mun.* Another alleged a scheme to stage accidents, where defendants were policy holders and not the medical providers. *GEICO Ins. Co. v. Williams*, 2011 N.Y. Misc. LEXIS 305 (Sup. Ct. Nassau Cty. 2011). GEICO cites only one case that presents the same questions as the current dispute, *State Farm Mutual Automobile Insurance Company v. Parisien*. That case is currently pending appeal in the Second Circuit. *Parisien*, 2d Cir. Docket No. 18-3786 (Case

Calendaring order entered September 11, 2019). *Parisien* does not focus on the question before this court, which is the stay of arbitrations. Rather, the court devotes nearly the entirety of its discussion to the question of whether the federal court has authority to enjoin pending actions in state court. *Id.* at 224-33. The court's substantial concerns about potential preclusion based on the pending litigation colors its analysis of the necessity to enjoin actions between the parties outside of the federal lawsuit. Such concerns are not present here where Defendants have sought only to exercise their statutory right to arbitration. There is in fact no concern that allowing Defendants to exercise that right will bar Plaintiffs from recovering any payments that may in the future be determined to have not been owed. *See Mun* at 99-100 (citing a letter from Lawrence Fuchsberg, Supervising Attorney, N.Y. Ins. Dep't).

Notably absent from GEICO's argument is any reference to the recent and directly on-point case of *Allstate Insurance Company v. Avetisyan*, an Eastern District of New York case involving very similar facts to those at hand, which denied the plaintiff insurer's request to stay pending no-fault arbitrations and to enjoin the filing of new no-fault arbitrations or civil actions. *See, generally, Avetisyan* (discussed more specifically at II(A), II(B) and above at VI).

## VII.    If an Injunction is Issued, it Must be Tailored to the Harm

A preliminary injunction is extraordinary and drastic relief. *Moore* at 510 (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). If an injunction is issued, it must be limited to addressing the potential harm. GEICO's requested injunction is far too broad: not only would it stay pending arbitrations, but it would enjoin Defendants from commencing new arbitration and the American Arbitration Association (AAA) from accepting those new arbitrations.

The harm that GEICO argues entitles them to an injunction is "wasting time and resources in arbitrations with awards that might eventually be, at best, inconsistent with judicial rulings…"

21

[Dkt. 21-1 at 8]. The commencement of arbitration by Defendants, and the acceptance of such by AAA, would involve none of GEICO's time nor resources, save for its obligations to support the no-fault arbitration system based on the number of its denials that end up in arbitration. [*See* Dkt. 21-2 ¶ 12]. The risk of inconsistent judgments and the potential "waste" of resources is not triggered until the parties are working on the substance of the arbitration. Any injunction issued should be limited to the actual processing by AAA and arbitration once accepted. Defendants should not be enjoined from filing for arbitration, nor should AAA be enjoined from accepting those filings.

Plaintiffs request to enjoin the commencement and acceptance of arbitration is at odds with their argument that hardship tips in their favor because Defendants would be entitled to statutory interest. Statutory interest does not accrue unless and until a party requests arbitration or institutes a lawsuit. 5 N.Y.C.R.R. § 65-3.9(c). As a large insurer with significant experience in the no-fault industry, GEICO is aware of this rule. If the injunction requested by GEICO was issued as written, GEICO would avoid liability for the interest that it concedes Defendants should be owed if they are forced to wait until the conclusion of this litigation before exercising arbitration rights to receive the principal payments due for services rendered.

The imposition of interest is designed to prevent insurers from improperly delaying payment and resolution of disputed claims. *See E. Acupuncture, P.C. v. Allstate Ins. Co.*, 61 A.D.3d 202, 873 N.Y.S.2d 335, 341-342 (2d Dep't 2009). As the no-fault system is intended to create a fair playing field for both insurers and providers, the tolling provision requires providers to promptly request arbitration or commence litigation before interest will accrue. *Id.* Insurers are not supposed to avoid their obligation to pay interest; the regulations go so far as to prohibit insurer from requiring or even suggesting that interest be waived as part of a settlement. 5 N.Y.C.R.R. §

65-3.9(b). GEICO has two options under the law: pay claims that are ruled owed and seek to recover those payments in the future if they are later deemed improper by this court, or refuse to pay and risk liability for interest. Instead, they wish to "have their cake and eat it too" by denying Defendants their right to either a prompt resolution or statutory interest. GEICO should not be granted an injunction so broad that Defendants are punished while Plaintiffs litigate.

## VIII.   If GEICO is Granted an Injunction, it Must Post Security

GEICO reaches the conclusion that it should not be required to post security because it claims Defendants will not suffer any prejudice or harm. Defendants directly dispute this assumption, as an extended delay in reimbursement could significantly interrupt their practice, as is GEICO's intention. Affidavit of Strut at ¶. Further, GEICO's claim that security is unnecessary because Defendants would be entitled to collect interest does not logically comport with the reason for security (besides, of course, being at odds with their requested injunction which would bar Defendants from recovering interest). "[A] bond is intended to afford security for damages that might be 'proximately caused by the [wrongful] issuance of [an] injunction." *Donohue v. Mangano*, 886 F.Supp 2d 126, 163 (E.D.N.Y. 2012) (quoting *B.G. Soft Ltd. v. BG Soft Int'l, Inc.*, No. 01 Civ. 17, 2002 WL 1467744, *2 (E.D.N.Y. 2002)). Here, the damages would in fact be that interest along with lost economic opportunity and business disruption. This scenario falls squarely under F.R.C.P. Rule 65(c), and GEICO should be held to their responsibility under the Rules to post security as a condition of receiving the benefit of judicial intervention that creates potentially undue harm to Defendants. If GEICO is implicitly asserting that it is such a large and successful insurance company that there is no fear that it will not be able to pay the claim, the court need only look to several such firms which are no longer in existence. It is not without precedent for such a large insurer to go insolvent. *See, e.g.,* Robert McDonald and Anna Paulson, *AIG in Hindsight*, 29

J. OF ECON. PERSP. 81 (2015); *Impairments and Insolvencies*, National Organization of Life & Health Insurance Guaranty Associations, https://www.nolhga.com/factsandfigures/main.cfm/location/insolvencies (last visited Oct. 2, 2019).

There is no special exemption in F.R.C.P. Rule 65(c) for large companies from having to post security. GEICO asserts no specific legal basis for not having to post security. The security would not only ensure payment of the actual claims, interest, and fees that would be available, but it would also need to be enough to pay for damages caused by the interruption of Defendants' practice.

**IX.     This Court Should Delay Ruling Until the Second Circuit Rules in *Parisien***

Plaintiffs do not rely on any controlling precedent directly on-point with the issues of this case. The Second Circuit is preparing to hear oral arguments in the case that will provide guidance. *State Farm Mutual Automobile Insurance Company v. Parisien,* an Eastern District of New York opinion relied upon by Plaintiffs, is currently on appeal to the Second Circuit. Oral arguments have been scheduled for November 19, 2019. Appellants in that matter argue two main points that echo Defendants' arguments here: under similar facts, a stay of no-fault arbitration or litigation pending resolution of a federal lawsuit is improper, and the burden of undergoing that arbitration or litigation does not constitute irreparable harm. A reversal of the Eastern District's grant of injunction would be a clear indication that the Second Circuit rejects the arguments brought forth by GEICO in this matter. As such, it is in the best interests of all parties and of the court's resources to delay ruling on the present motion until the Second Circuit issues a decision.

**CONCLUSION**

Plaintiffs are at the very least premature in their demand. They cannot meet the standard required for a preliminary injunction, nor is an injunction proper in the case at hand. The filing of

24

the present action does not affect Plaintiffs' ongoing duties under New York State no-fault rules, and Defendants should be permitted to continue making use of the statutorily created avenues for collection of money owed for services performed. In the alternative, any injunction that is issued must be narrowly tailored to address potential harm without prejudicing Defendants' rights to recover interest, and it must include the posting of a security bond by Plaintiffs as required by the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

**WHEREFORE**, Defendants respectfully request that the Court deny Plaintiffs' Motion to Stay Defendants' Collections Proceedings and grant such other and further relief as the Court deems just and proper.

Dated: Buffalo, New York
October 2, 2019

*s/Robert E. Knoer, Esq.*
Robert E. Knoer, Esq.
THE KNOER GROUP, PLLC
*Attorneys for Defendants*
424 Main Street, Suite 1820
Buffalo, New York 14202
Phone: (716) 332-0032
Fax: (716) 362-8748
Email: rknoer@knoergroup.com

TO:    Barry I. Levy, Esq.
Ryan Goldberg, Esq.
Max Gershenoff, Esq.
Joshua D. Smith, Esq.
RIVKIN RADLER LLP
*Attorneys for Plaintiffs*
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000
barry.levy@rivkin.com
ryan.goldberg@rivkin.com
max.gershenoff@rivkin.com