UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Government Employees Insurance Co. et al.,

                                    Plaintiffs,

        v.

Mikhail Strut, M.D. *a/k/a/ Mikhail
        Strutsovskiy, M.D.* et al.,

                                    Defendants.

**Report and Recommendation**

19-CV-728V

## I.    INTRODUCTION

Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General

Insurance Company, and GEICO Casualty Co. ("GEICO" collectively) together underwrite

automobile insurance in New York.  As an automobile insurance underwriter, GEICO participates

in New York's no-fault liability system.  The no-fault system comprises numerous regulations, but

the overall objective of the system is to streamline the process by which insurance companies pay

medical providers for services that they deliver to people involved in car accidents.  Since about

2017, three of the medical providers that GEICO has paid many times through the no-fault system

are defendants Mikhail Strut, M.D. ("Strut," also known as Mikhail Strutsovskiy, M.D.); Res Physical

Medicine & Rehabilitation Services, P.C.; and Cheryle Hart, M.D.  GEICO has become concerned

about patterns that it perceives in the billing claims that defendants have submitted over the past

few years.  Specifically, GEICO has become concerned that drivers who received only outpatient

services after minor car accidents found their way to defendants and soon generated diagnoses,

testing, and services that did not match the severity of the accidents.  GEICO also is troubled by the

language that it sees in a lot of billing claims from defendants—language that repeats, down to the

typographical errors, the same symptoms, ranges of motion, and services needed across numerous

patients in different circumstances. GEICO has become particularly alarmed about what it sees in defendants' billing practices when viewed in the context of Strut's prior history—a felony conviction in this District related to Medicare fraud; and prior litigation by GEICO (which admittedly settled short of any findings of fault) over allegations nearly identical to the allegations here. With no abatement in the problems that it saw in defendants' billing claims, GEICO chose to sue defendants and to accuse them of racketeering and other fraudulent activity.

Each side now has one motion pending. Defendants have filed a motion (Dkt. No. 14) to dismiss GEICO's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Very briefly, defendants fault GEICO for failing to confirm any actual instances of fraud; for failing to establish reasonable reliance on any billing that it questioned when it could have challenged that billing through the no-fault system; and for failing to establish this Court as an appropriate forum for grievances that the no-fault arbitration system is designed to address. GEICO believes that the no-fault system is not the exclusive forum for the allegations alleged in the complaint and that the complaint contains more than enough detail about plausible fraudulent activity to satisfy Rules 8 and 9(b). Meanwhile, GEICO has filed a motion (Dkt. No. 21) for a preliminary injunction under Rule 65. GEICO wants the Court to freeze any current or future no-fault arbitration proceedings concerning defendants' billing claims until this case runs its course. Defendants believe that they would face a harm that exceeds whatever GEICO thinks that it is established through mere pleadings, but GEICO argues that the equities favor resolution of common issues through this one case instead of numerous and potentially inconsistent arbitration results. GEICO argues further that it has, at a minimum, established sufficiently serious questions about defendants' billing activities that continued arbitration proceedings should not be allowed to alter the status quo.

District Judge Lawrence J. Vilardo has referred this case to this Court under 28 U.S.C. § 636(b). (Dkt. No. 15.) The Court has deemed the motions submitted on papers under Rule 78(b). For the reasons below, the Court respectfully recommends granting GEICO's motion and denying defendants' motion.

## II.    BACKGROUND

This case concerns allegations that GEICO has paid millions of dollars since 2017 to defendants for no-fault medical services that were medically unnecessary, badly exaggerated, or outright fabricated. Understanding the present case will become easier by putting it in the context of two prior cases brought against Strut in this District. The Court will summarize each case; familiarity with the dockets, for the sake of brevity, is otherwise presumed.

### A.  *Criminal Case Against Strut*

In 2009, Strut waived indictment and was charged in a one-count information with a violation of 18 U.S.C. § 1035(a)(2). (*See generally U.S. v. Strutsovskiy* (the "Criminal Case"), Case No. 09-CR-72 (W.D.N.Y.).) The Government's count read in its entirety as follows:

> Beginning in January 2003, and continuing to September 2004, the exact dates being unknown, in the Western District of New York, the defendant, MIKHAIL STRUTSOVSKIY, in a matter involving a health care benefit program as defined in Title 18, United States Code, Section 24(b), did knowingly and willfully make materially false and fraudulent statements and representations in connection with the delivery of, and payment for, health care services, in that the defendant caused HCFA 1500 claim forms for reimbursement for medical treatment to be submitted to Medicare on which he falsely certified that he had personally rendered treatments to Medicare beneficiaries when, in truth and in fact, as he then knew, he had not personally rendered the claimed services to the Medicare beneficiaries.

(Criminal Case, Dkt. No. 1 at 1.) On March 2, 2009, Strut pled guilty to Count One of the information and entered a plea agreement. Among other details, the plea agreement contained the following information about Strut's fraudulent scheme against Medicare:

It was further part of the scheme that in order to generate payments from Medicare, personnel at All Care caused to be prepared and submitted to Health Now Upstate Medicare fraudulent claim forms which falsely certified that the medical treatments/services rendered to patients were determined by the medical providers, including the defendant, to be medically necessary. In truth and in fact, many of the treatments/services were not medically necessary and were provided as a matter of routine only because the defendant and the *de facto* owners agreed they would be provided to all patients in order to receive money from Medicare.

* * *

During the period of January 2003 through June 2003, on days when Strutsovskiy was in medical school in Baltimore and not present in the Buffalo area, Stein and Kats arranged for Medicare patients at All Care to receive physical therapy and massage treatment by providers not registered or certified by Medicare to provide and bill such services. Pursuant to the agreement between the defendant and the other participants, the defendant would periodically (usually on weekends) travel to Buffalo and sign Medical claim forms and/or medical documentation to support such claim forms, on which the defendant would falsely certify that he had personally rendered the physical therapy that had been rendered by unlicensed and/or unregistered individuals to patients on dates the defendant was not present at the office or even in the Buffalo area.

During the period of July 2003 through September 27, 2004, on days when Strutsovskiy was performing residency duties at ECMC and not present in the office of All Care, Stein and Kats arranged for Medicare patients at All Care to receive physical therapy and massage treatment by providers not registered or certified by Medicare to provide and bill such services. Pursuant to the agreement between the defendant and the other participants, the defendant would periodically (usually on weekends) present himself at the All Care office solely to sign Medical claim forms and/or medical documentation to support such claim forms, on which the defendant would falsely certify that he had personally rendered the physical therapy that actually had been rendered by unlicensed and/or unregistered individuals to patients on dates the defendant was not present at the office.

(Criminal Case, Dkt. No. 3, at 6–7.) Strut was sentenced to three years of probation and $131,138 of restitution. (Criminal Case, Dkt. No. 14.) At his sentencing, Strut offered a statement that included the following comment (reprinted verbatim): "My action was wrong. I'm very remorseful what happened. And, you know, and I'm ready to answer for what I've done. However, what happens is not really define what kind of person I am. You know, like I have done a lot of good for people in this community. You know, again, I'm not a career criminal."

4

### B. Prior Civil Case Against Strut

On April 18, 2012, GEICO sued Strut and several other individual and corporate defendants. (*See generally* Case No. 12-CV-330 (W.D.N.Y.) (the "Prior Civil Case").) In the Prior Civil Case, GEICO sought to recover more than $300,000 in no-fault benefits and to be relieved of any obligation to pay about $405,000 in pending claims. The complaint ran 99 pages, but the essence of it was that Strut and others submitted "hundreds of fraudulent no-fault charges for initial consultations, follow-up evaluations, trigger point injections, prolotherapy injections, ultrasound guidance for the injections, electromyography tests, nerve conduction velocity tests, drug screening, and related services (collectively the 'Fraudulent Services'), as well as fraudulent no-fault charges for prescription medications, including large quantities of narcotics (collectively the 'Drugs'), that allegedly have been provided to persons involved in New York automobile accidents ('Insureds')." (Prior Civil Case, Dkt. No. 1, at 1–2.) GEICO accused the defendants of racketeering and fraud. At the close of discovery, the defendants filed a motion for summary judgment. (Prior Civil Case, Dkt. No. 74.) Among other arguments, the defendants sought summary judgment because GEICO could not establish justifiable reliance; GEICO had to work within the no-fault system to address any concerns about medical necessity; and GEICO failed to explain how any individual medical claim was fraudulent, thereby falling short of federal and state pleading standards for fraud. (*See generally* Prior Civil Case, Dkt. No. 75.) While the motion for summary judgment was pending, GEICO filed a motion for a preliminary injunction enjoining the defendants and the American Arbitration Association from commencing and processing any no-fault insurance collection arbitrations pending the outcome of the Prior Civil Case. (*See generally* Prior Civil Case, Dkt. No. 100.)

On December 2, 2016, Magistrate Judge H. Kenneth Schroeder, Jr. issued a Report and Recommendation recommending that the motion for summary judgment be denied—with one minor exception to which GEICO consented.[1]  (Prior Civil Case, Dkt. No. 96; *see also Gov't Employees Ins. Co. v. Strutsovskiy* ("GEICO I"), No. 12-CV-330A(SR), 2016 WL 11258223 (W.D.N.Y. Dec. 2, 2016).)  Judge Schroeder made several conclusions.  Judge Schroeder decided that GEICO could proceed in federal court because "defendants may not compel arbitration of GEICO's claim for reimbursement of fraudulent no-fault claims already paid to defendants.  Moreover, even though the weight of authority concludes that, absent waiver, a claimant has a right to compel arbitration of unpaid claims, it is common for federal courts to stay such proceedings where, as here, plaintiff seeks a declaratory judgment that defendants have no right to payment of pending no-fault claims and defendants counterclaim seeking payment of outstanding no-fault claims."  2016 WL 11258223, at *5 (citations omitted).  With respect to the defendants' arguments that GEICO did not provide enough specificity to support fraud claims, Judge Schroeder reviewed how GEICO provided examples of overused medical billing codes as well as examples of how "Dr. Strut's initial consultation reports reveal the use of boilerplate language, including identical typographical errors, in his description of patient history and physical examination and his diagnoses are a virtually identical laundry list of maladies unlikely to be caused by the relatively minor motor vehicle accidents experienced by his patients, with virtually identical recommendations for a limited number of medically unnecessary pain management treatments, including substantial quantities of narcotic drugs."  2016 WL 11258223, at *6.  With respect to arguments about justifiable reliance, Judge Schroeder concluded that "GEICO is entitled to rely upon the verifications submitted by healthcare

---

[1] The Report and Recommendation predated GEICO's motion and thus did not address it.

providers for purposes of the no fault reimbursement scheme even as it investigates the veracity of those verifications for purposes of a broader fraud claim." 2016 WL 11258223, at *7 (citation omitted). Finally, Judge Schroeder summarily rejected the defendants' attack on GEICO's racketeering claims. "Defendants argue that a RICO claim is precluded where a comprehensive statute, such as the no-fault statute, provides a remedy for plaintiff's claims. However, the case law cited in support of this argument provides that federal RICO claims are precluded where the source of the asserted right is covered by a more detailed *federal* statute." 2016 WL 11258223, at *7 (internal quotation marks and citations omitted).

On October 26, 2017, Judge Vilardo adopted the Report and Recommendation and granted GEICO's motion for a preliminary injunction. (Prior Civil Case, Dkt. No. 117; *see also Gov't Employees Ins. Co. v. Strutsovskiy* ("GEICO II"), No. 12-CV-330, 2017 WL 4837584, at *1 (W.D.N.Y. Oct. 26, 2017).) While endorsing and elaborating on Judge Schroeder's analysis, Judge Vilardo noted that "complex insurance fraud schemes take time to detect precisely because such schemes are designed not to be detected." 2017 WL 4837584, at *6. This point negated arguments from the defendants that fraudulent scienter could not exist where at least some no-fault arbitration claims against GEICO succeeded. With respect to a preliminary injunction, Judge Vilardo noted that "multiple federal and state courts have concluded that wasting time and resources in arbitrations that might result in awards inconsistent with future judicial rulings constitutes irreparable harm sufficient to stay arbitration." 2017 WL 4837584, at *6. Judge Vilardo concluded further that sufficiently serious questions existed concerning the merits of GEICO's claims and that the balance of hardships tipped in favor of having concerns about numerous payments resolved in one action.

The Prior Civil Case formally settled on January 17, 2018. (Prior Civil Case, Dkt. No. 121.)

### C. This Case

GEICO filed the complaint in this case on June 4, 2019. (Dkt. No. 1.) Similar to the Prior Civil Case, GEICO "seeks to recover more than $1,650,000.00 that the Defendants wrongfully obtained from GEICO by submitting, and causing to be submitted, thousands of fraudulent no-fault insurance charges relating to medically unnecessary, illusory, and otherwise non-reimbursable healthcare services, including purported initial examinations, follow-up examinations, 'outcome assessment tests,' psychological testing, drug screening, prolotherapy injections, electrodiagnostic testing, and related services (collectively the 'Fraudulent Services') allegedly provided to New York automobile accident victims who were eligible for coverage under GEICO automobile insurance policies ('Insureds')." (*Id.* at 1–2.) Similar to the Prior Civil Case, GEICO also seeks declaratory judgment that it does not have to pay approximately $500,000 in pending no-fault insurance claims. The central theory of liability behind GEICO's racketeering and fraud claims is similar to the one in the Prior Civil Case: Since 2017, a pattern has emerged in which identical boilerplate language, down to typographical errors, repeats itself so many times that 1) the statistical probability of so many car accident patients having the exact same injuries and needing the exact same treatments is vanishingly small; and 2) the mismatch between the nature of the car accidents, the initial descriptions of injuries, and the long list of treatments ordered has become obvious. GEICO has filled the complaint with representative examples of the boilerplate language and the alleged mismatches.

Defendants filed the pending motion to dismiss on July 10, 2019. The arguments are substantively similar to the arguments made for summary judgment in the Prior Civil Case. According to defendants, GEICO has failed to explain why any individual claim is fraudulent. GEICO has failed to point to any finding of fraudulent billing through the no-fault system. GEICO has failed to establish reasonable reliance on defendants' statements when it received payment

claims. Defendants argue that GEICO had an opportunity and an obligation to pursue any concerns about fraud through the no-fault system. Defendants argue further that GEICO has failed to show enough reliance to establish proximate cause for any racketeering claims. Interestingly, while the Prior Civil Case itself is acknowledged, Judge Schroeder's recommendations and Judge Vilardo's decision from the Prior Civil Case are not cited at all in the motion papers. In opposing the motion, GEICO cites many of the authorities that it used in the Prior Civil Case to address similar arguments. GEICO also relies heavily on Judge Schroeder's and Judge Vilardo's prior determinations.

GEICO filed the pending motion for a preliminary injunction on August 15, 2019. The arguments are substantively similar to the arguments made for injunctive relief in the Prior Civil Case. GEICO cites Judge Vilardo's prior decision and other case law to argue that it should not have to waste resources appearing in numerous individual arbitration proceedings when all of the potential payments underlying those proceedings can be resolved in a single action. GEICO raises the additional possibility that different arbitration results could be inconsistent with each other and with the final determination in this case. Resolving all of the issues in the complaint in a single action, in GEICO's view, addresses irreparable harm, the balance of equities, and the public interest. Finally, GEICO argues, as it did in the Prior Civil Case, that it has shown a likelihood of success, or at least the existence of sufficiently serious questions, with respect to the patterns of fraudulent billing that it allegedly has uncovered since 2017. In opposing the motion for a preliminary injunction, defendants cite Judge Vilardo's prior decision only to make the point that Judge Vilardo granted similar relief after summary judgment had been denied—*i.e.*, not after the pleading stage. Defendants otherwise use arguments in opposition similar to what they used in the Prior Civil Case. Defendant's fault GEICO for failing to identify specific inconsistent judgments in the arbitration

proceedings that have occurred so far. Defendants argue that the issues raised here are different than the issues raised in any individual arbitration proceeding. GEICO cannot claim harm, in defendants' view, from participating in arbitration proceedings that are an established part of the no-fault system. Defendants additionally point out that discovery has not occurred yet in this case, and that the Court would be ruling solely on allegations within the complaint. Finally, defendants add their own factor to the balance of equities, namely that an injunction prohibiting arbitration of disputed payments would cripple their business before the merits of this case could run their course.

## III. DISCUSSION

### A. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Courts assess Rule 12(b)(6) motions "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 61 (2d Cir. 2010) (internal quotation marks and citation omitted). "On a motion to dismiss, the court may consider any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001) (editorial and internal quotation marks and citation omitted). "Simply stated, the question

under Rule 12(b)(6) is whether the facts supporting the claims, if established, create legally cognizable theories of recovery." *Cole-Hoover v. Shinseki*, No. 10-CV-669, 2011 WL 1793256, at *3 (W.D.N.Y. May 9, 2011) (internal quotation marks and citation omitted).

As a preliminary matter, the Court must decide whether to consider a number of documents that have become part of the record but lie outside of the complaint. "Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials. Generally, we do not look beyond facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (internal quotation and editorial marks and citation omitted). "Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint. However, even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks and citations omitted). "A document is integral to the complaint where the complaint relies heavily upon its terms and effect. Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotations from the document is not enough. In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would

undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Goel*, 820 F.3d at 559 (internal quotation and editorial marks and citations omitted).

Applying this standard, the Court can consider a few of the documents in the record and referenced in the complaint. The complaint refers to the Criminal Case and the Prior Civil Case, along with information in the dockets for each case. The dockets for the Criminal Case and the Prior Civil Case might contain information that is relevant to injunctive relief, discovery, or an eventual trial in this case. For the narrow purpose of Rule 12(b)(6), however, the Court has to keep in mind that the activities alleged in the two prior cases involved different patients, different periods of time, and different defendants apart from Strut. Prior civil or criminal liability by itself would not be integral to present claims of fraud in the way that the full text of a contract is integral to claims that the same contract was breached. Additionally, prior civil or criminal liability would make the present allegations more plausible only by way of propensity, which in turn presupposes the truth of all of the contents of the dockets for the two prior cases. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (dismissal vacated where documents from unrelated court cases "were used not to establish their existence, but rather to provide the reasoned basis for the court's conclusion that 'the record shows that Global cannot be expected to pay its obligations to the City in a timely or honest manner.'") (citation omitted). The safer approach is to take judicial notice of the existence of Strut's prior criminal conviction and prior civil settlement and to go no farther. *Cf. Artec Constr. & Dev. Corp. v. City of New York*, No. 15 CIV. 9494 (KPF), 2017 WL 5891817, at *3 (S.D.N.Y. Nov. 28, 2017) ("The Court thus considers the fact of Plaintiff's guilty plea and felony conviction, though it does not rely on the Plea Agreement, Superior Court Information, or Certificate of Disposition for the truth of the matters asserted therein.") (citation omitted); *Weaver v. City of New York*, No. 13-CV-20 CBA SMG, 2014 WL 950041, at *3 (E.D.N.Y. Mar. 11, 2014) ("A

12

court may certainly take judicial notice of public records for their existence, such as an indictment or documents relating to the disposition of a criminal case."). As for other documents, the record contains legal opinions about insurance regulations; affidavits about general medical procedures that do not refer to specific patients; and extensive information about medical billing codes. (Dkt. Nos. 20-2, 23-2, 26-1 to 26-12.) Most of this information does not appear in the complaint; at most, the complaint makes references to it. Also, while the documents might become important during discovery or at trial, they do not help the Court determine whether the complaint's alleged instances of billing fraud would be factually plausible. For purposes of the motion to dismiss, the Court will consider the other documents and exhibits in the record only for the limited purpose of aiding its legal research, to the extent that defendants are attacking GEICO's allegations as not legally cognizable.

Addressing the preliminary matter of document review allows the Court to proceed to the merits of the motion. Defendants attack the complaint for failing to contain enough detail to satisfy the heightened pleading requirements for fraud under Rule 9(b) and for having conclusory allegations. (Dkt. No. 14-2 at 16–17.) The problem with defendants' argument is that it focuses heavily on a purported lack of findings and on Exhibit 1 of the complaint. The Court agrees that Exhibit 1—a spreadsheet listing 18,000 payment claims—by itself could not make fraud or any other claim plausible. The spreadsheet lists claim numbers, dates of submission, medical codes billed, and amounts charged with no context from the underlying clinical records. Nonetheless, GEICO took great care to add significant detail to the complaint beyond the spreadsheet. In multiple places of the complaint, GEICO took some of the claims in the spreadsheet that it believed were representative samples and explained how repeated boilerplate language, or a mismatch between

initial records and billing records, made the payment claims suspicious.  Here is one of GEICO's

representative examples, reprinted in its entirety from the complaint:

> On December 29, 2017, an Insured named CJ was involved in a minor
> automobile accident.  In keeping with the fact that the accident was minor, the
> contemporaneous police report indicates that the accident was a low-speed, low
> impact collision.  The police report also indicates that CJ's vehicle was drivable
> following the accident, and that no one was injured in the accident.  Nonetheless,
> later that day, CJ sought treatment at Mount St. Mary's Hospital.  However, and in
> keeping with the fact that CJ was not seriously injured in the accident, she was briefly
> observed on an outpatient basis, and then discharged with nothing more serious than
> a sprain diagnosis.  To the extent that CJ experienced any health problems as the
> result of the minor accident, they were of low severity.  Even so, following a
> purported initial examination of CJ by Hart on August 6, 2018, the Defendants billed
> GEICO for the initial examination using CPT code 99204, and thereby falsely
> represented that CJ presented with problems of moderate to high severity.

(Dkt. No. 1 at 17.)  In other examples, GEICO alleged that "a statistically impossible number of

purported initial examination reports submitted by or on behalf of the Defendants included the

following, identical patient history language: (i) 'Ongoing limitations while performing activities of

daily living and household and domestic duties due to increased pain and restricted movement.'; (ii)

'Ambulating distances is limited.'; (iii) 'Needs to frequently alternate standing and sitting in an

attempt to improve relief.'; [and] (iv) 'Sleep is interrupted due to pain.'"  (*Id.* at 24.)  GEICO

included the following among its examples:

> On January 10, 2018, an Insured named MS was involved in a minor
> automobile accident.  In keeping with the fact that the accident was minor, the
> contemporaneous police report indicates that the accident was a low-speed, low
> impact collision that occurred while the vehicles were in a parking lot, that MS's
> vehicle was drivable following the accident, that MS drove his vehicle away from the
> scene of the accident, and that MS had no visible injuries as a result of the accident.
> Nonetheless, later that day, MS sought treatment at Sisters of Charity Hospital.
> However, and in keeping with the fact that MS was not seriously injured in the
> accident, he was briefly observed on an outpatient basis, and then discharged with
> nothing more serious than a sprain and bruise diagnosis.  Even so, following a
> purported initial examination of MS by Hart on August 24, 2018, the Defendants
> included the boilerplate patient history language referenced above in the examination
> report they submitted to GEICO, despite the fact that MS did not suffer, and could
> not have suffered, from these symptoms as the result of his minor accident.

(*Id.* at 25.)  What evidence would emerge at a trial is another matter, but for now, GEICO has put

forth very detailed allegations of intentional and material misrepresentations that it reasonably used

under the no-fault system to make payment.  *Cf. GEICO I*, 2016 WL 11258223, at *6 (fraud

allegations sufficient where they described boilerplate language and injuries unlikely to be caused by

minor car accidents); *see also GEICO II*, 2017 WL 4837584, at *5 ("GEICO is entitled to rely upon

the verifications submitted by healthcare providers for purposes of paying no-fault claims—perhaps

even as it investigates the veracity of those verifications for purposes of a broader fraud claim.").

GEICO's allegations also address defendants' argument about reasonable reliance.  Defendants

argue that "[r]eliance is not justifiable when the statements are specifically suspected and investigated

by the plaintiff."  (Dkt. No. 14-2 at 22.)  Judge Schroeder disagreed when evaluating an essentially

identical argument for summary judgment in the Prior Civil Case.  "GEICO is entitled to rely upon

the verifications submitted by healthcare providers for purposes of the no fault reimbursement

scheme even as it investigates the veracity of those verifications for purposes of a broader fraud

claim.  In any event, a determination as to when GEICO possessed sufficient information as to

render its reliance upon such verifications unreasonable is not appropriate for summary judgment,

particularly where, as here, the allegedly fraudulent scheme required comparison of a sufficiently

large pool of claims and where defendants billed under different names."  *GEICO I*, 2016 WL

11258223, at *7 (citations omitted).  Judge Vilardo agreed, finding—again in the summary-judgment

context—that he could not determine as a matter of law exactly when GEICO would have been on

notice of any fraud.  *See GEICO II*, 2017 WL 4837584, at *5 (citations omitted).

   Two other arguments from defendants warrant brief attention.  Defendants seek dismissal of

any claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.

§ 1962(c), on the basis that GEICO has not demonstrated reasonable reliance or proximate cause.

"To plead a RICO violation, a plaintiff must allege: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce.  He must also prove that he was injured in his business or property by reason of a violation of section 1962." *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, No. 04CV5045(ILG), 2008 WL 4146190, at *10 (E.D.N.Y. Sept. 5, 2008) (internal quotation marks and citations omitted).  Here, GEICO has alleged that defendants committed repeated mail fraud by using the United States mails to perpetrate fraudulent billing upwards of $1,650,000.  (Dkt. No. 1 at 108–11.)  That is enough at this early pleading stage.  *See Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 296 (E.D.N.Y. 2013) (RICO claims based on fraudulent billing can survive dismissal); *State Farm Mut. Auto. Ins. Co. v. Valery Kalika*, No. 04 CV 4631 (CBA), 2006 WL 6176152, at *17 (E.D.N.Y. Mar. 16, 2006) ("In the Complaint, State Farm alleges that Dr. Kalika, is not only the Chief Executive Officer of Kalika, P.C., but that he individually performed and interpreted the unnecessary tests that form the basis for the 1,256 fraudulent claims submitted to State Farm.  He is alleged not only to have prepared and signed the fraudulent claim forms containing misrepresentations as to the medical necessity of the tests and medical condition of the insureds, but he is also alleged to have misrepresented the nature of the actual tests performed by citing the wrong billing code on the claims form.  These allegations more than suffice for purposes of notice pleading.") (citations omitted).  Finally, defendants argue that determinations about medical necessity and proper billing belong within the no-fault system.  "GEICO seeks relief from the No-Fault system in this court.  Such relief is a matter for the New York State legislature, not an ill-conceived RICO fraud conspiracy claim."  (Dkt. No. 14-2 at 29.)  Judge Schroeder and Judge Vilardo have rejected this argument under essentially identical circumstances in the Prior Civil Case,

and defendants have not given this Court any reason to change course. *See GEICO I*, 2016 WL 11258223, at *5 ("[I]t is clear that defendants may not compel arbitration of GEICO's claim for reimbursement of fraudulent no-fault claims already paid to defendants. Moreover, even though the weight of authority concludes that, absent waiver, a claimant has a right to compel arbitration of unpaid claims, it is common for federal courts to stay such proceedings where, as here, plaintiff seeks a declaratory judgment that defendants have no right to payment of pending no-fault claims and defendants counterclaim seeking payment of outstanding no-fault claims.") (citations omitted); *GEICO II*, 2017 WL 4837584, at *4 ("What is more, the Second Circuit has held that a defendant has no right to elect arbitration under Section 5106 for an insurer's fraud claims. For those reasons, the defendants may not compel arbitration of GEICO's fraud-based claims, whether the underlying no-fault claims were paid to the defendants or not.") (citations omitted).

Overall, GEICO has pled detailed allegations of systemic fraudulent billing that occurred through upcoding and through services that either were not medically necessary or did not occur. The allegations deserve at least to be tested through discovery. The Court accordingly recommends denying defendants' motion to dismiss.

### B. Motion for Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). The Second Circuit has maintained that *Winter* left intact a flexible alternative standard to establishing likelihood of success on the merits: "sufficiently serious questions going to the merits to make them a fair ground for litigation." *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir.

17

2010). "The 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction. Because the moving party must not only show that there are 'serious questions' going to the merits, but must additionally establish that 'the balance of hardships tips *decidedly*' in its favor, its overall burden is no lighter than the one it bears under the 'likelihood of success' standard." *Id.*

Serious questions about the merits and about costs and benefits are exactly what persuade the Court in favor of GEICO. The Criminal Case and Prior Civil Case by themselves could not make success on the merits here more likely, except through propensity. As with the motion to dismiss, the Court prefers not to consider the present case through the lens of propensity. The prior cases, however, do help a little to raise questions about payments that GEICO has been making to defendants. Twice before, Strut has faced civil and criminal litigation under circumstances pertaining to fraudulent billing. The prior circumstances added some context to the considerable detail that GEICO has placed in the present complaint. In the complaint, GEICO has pled mismatches between police reports, clinical records, and medical billing including medical codes paid. *Cf. Gov't Employees Ins. Co. v. Mayzenberg*, No. 17-CV-2802, 2018 WL 6031156, at *6 (E.D.N.Y. Nov. 16, 2018) ("GEICO seeks a declaratory judgment that Defendants are ineligible for reimbursement of claims submitted to it because (1) the acupuncture services were not medically necessary and were provided pursuant to pre-determined fraudulent protocols designed solely to enrich Defendants, rather than to treat or otherwise benefit the insureds; (2) Defendants engaged in a scheme to defraud GEICO using unlawful fee-splitting, kickback, and referral arrangements with unlicensed persons in violation of New York law; (3) Defendants intentionally and fraudulently

misrepresented and exaggerated the level of services purportedly provided in order to inflate the

charges submitted to GEICO; and (4) the services were performed by independent contractors

rather than employees of Mingmen or Sanli.  Under New York's No-Fault Insurance Laws, the

Court need only find that one of the above allegations is true to conclude that Defendants are

ineligible to receive reimbursement for No-Fault Benefits.  For example, if the Court finds that

Defendants were engaged in fee-splitting, kickback, and referral arrangements, that alone would

disqualify Defendants from reimbursement.  The Court finds that GEICO has shown more than a

likelihood of success on that allegation.").  These mismatches, if true, will be confirmed during

discovery through documentary evidence.  *Cf. State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp.

3d 215, 234 (E.D.N.Y. 2018) (finding serious questions about medical necessity where "State Farm

has adequately detailed a complicated scheme of alleged fraud activity and, in light of the exhibits on

record, it cannot be said that their request for injunctive relief rests on mere hypotheticals") (internal

quotation and editorial marks and citations omitted).[2]  Meanwhile, though, and as explained above

and in Judge Schroeder's and Judge Vilardo's prior decisions, GEICO is not in a position to

challenge questionable payments through the no-fault system.  Once payments are made, they

cannot be arbitrated, and defendants have made clear that they intend to pursue arbitrations for new

payments while this case is pending.  *Cf. Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F. Supp. 2d

243, 264 (E.D.N.Y. 2012) ("To the extent that defendants have not yet sued on any unpaid claims,

they may compel arbitration of those claims.  Permitting these individual claims to proceed to

---

[2] Defendants have suggested that the Court should delay ruling on GEICO's motion until the Second Circuit adjudicates the pending appeal in *Parisien*.  (Dkt. No. 26 at 29.)  The Court declines to do so for two reasons. The issue that likely will draw the most attention in *Parisien* is an issue of first impression concerning the Anti-Injunction Act and the injunction against state court proceedings.  That issue does not exist here. Additionally, the security that the Court is recommending will offset any need to wait for *Parisien* to run its course.

arbitration while their claim for a declaratory judgment remains pending in this court puts the plaintiffs at significant risk of multiple judgments that may be inconsistent with the ultimate decision in this case. In the interests of judicial economy, arbitration of such unpaid claims is stayed pending a decision in the present case."). The net result of all of these circumstances is that, without an injunction that stays additional arbitration proceedings, GEICO will have to make payments on claims with serious questions about consistency; will have to arbitrate many times on claims that it tries to resist; and will face the prospect of inconsistent judgments between arbitration proceedings and from this case. Judicial economy tips the balance of those equities decidedly in GEICO's favor, to avoid irreparable harm. *See GEICO II*, 2017 WL 4837584, at *7 (W.D.N.Y. Oct. 26, 2017) (citations omitted). A preliminary injunction for the balance of this litigation thus is appropriate.

Although the Court believes that a preliminary injunction is appropriate, it is willing to recommend two accommodations to help defendants. The first concerns security. "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Security furnished under Rule 65(c) will not include any damages for claims against the party who instituted the action other than those directly attributable to the improvidently issued injunction." *Interlink Int'l Fin. Servs., Inc. v. Block*, 145 F. Supp. 2d 312, 315 (S.D.N.Y. 2001) (internal quotation marks and citations omitted). The Criminal Case and the Prior Civil Case, combined with the detailed allegations in the complaint, raise serious concerns about the nature of the payments that GEICO is making. Nonetheless, the claims in this case have to be assessed on their own merits regardless of prior cases. In the event that GEICO does not ultimately prevail, some protection should be in place for payments that defendants will not be receiving. GEICO itself suggested in the complaint that, as of June 2019,

approximately $500,000 in pending no-fault insurance claims potentially had to be paid. (Dkt. No. 1 at 2.) That number should suffice, as it is grounded in actual pending claims and is not speculative. Additionally, the parties are hereby on notice that if Judge Vilardo ultimately adopts this Report and Recommendation then the Court will put this case on an expedited schedule that will conclude discovery in no more than six months. A fast track will provide defendants some additional protection in that GEICO's ultimate success or failure on the merits, through summary judgment or trial, will be determined fairly quickly.

## IV. CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends granting GEICO's motion (Dkt. No. 21) conditionally. A preliminary injunction should issue that stays all pending or future no-fault arbitration proceedings by defendants against GEICO until this case is resolved, but that injunction should issue only upon GEICO's deposit of $500,000 of security with the Clerk of the Court.

The Court further recommends denying defendants' motion (Dkt. No. 14).

## V. OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for the parties by electronic filing on the date below. "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Any objections must be filed electronically with the Clerk of the Court through the CM/ECF system.

"As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted); *see also Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002)

("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision.") (citation omitted). "We have adopted the rule that failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object. The rule is enforced under our supervisory powers and is a nonjurisdictional waiver provision whose violation we may excuse in the interest of justice." *United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38–39 (2d Cir. 1997) (internal quotation marks and citations omitted).

"Where a party only raises general objections, a district court need only satisfy itself there is no clear error on the face of the record. Indeed, objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review. Such objections would reduce the magistrate's work to something akin to a meaningless dress rehearsal." *Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 312–13 (S.D.N.Y. 2009) (internal quotation and editorial marks and citations omitted).

SO ORDERED.

___/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: November 26, 2019