UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

GOVERNMENT EMPLOYEES INSURANCE CO.,
GEICO INDEMNITY CO., GEICO GENERAL
INSURANCE COMPANY and
GEICO CASUALTY CO.,

                              Plaintiffs,                Docket No.: 1:19-cv-00728 (LJV)

      -against-

MIKHAIL STRUT, M.D. a/k/a MIKHAIL
STRUTSOVSKIY, M.D., RES PHYSICAL
MEDICINE & REHABILITATION SERVICES, P.C.,
and CHERYLE HART, M.D.

                              Defendants.

_____

## MEMORANDUM OF LAW IN SUPPORT TO
## DEFENDANT'S MOTION TO COMPEL

Robert E. Knoer, Esq.
THE KNOER GROUP, PLLC
*Attorneys for Defendants*
424 Main Street, Suite 1820
Buffalo, New York 14202
Phone: (716) 332-0032
Fax: (716) 362-8748
Email: rknoer@knoergroup.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................v

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF THE CASE..............................................................................................1

STATEMENT OF THE FACTS ...........................................................................................3

SUMMARY OF THE ARGUMENT ....................................................................................4

ARGUMENT ........................................................................................................................5

I.      DEFENDANTS' INTERROGTORIES ARE NOT IMPROPER AND PLAINTIFFS
        MUST PROVIDE LEGITIMATE RESPONSES ......................................................5

        A. If any Defendants' Interrogatories are in fact contention interrogatories, the Court
           should not allow Plaintiffs to defer answering those interrogatories ....................6

II.     PLAINTIFFS MAY NOT RELY ON RULE 33(d) AND MUST PRODUCE
        WRITTEN RESPONSES TO DEFENDANTS' INTERROGATORIES ...................7

        A. Plaintiffs may not reply on Rule 33(d) because the burden of review is not
           substantially the same for both parties ................................................................8

           i.     Dr. Hart's Interrogatory No. 2 ...................................................................8

           ii.    Dr. Hart's Interrogatory No. 7 ...................................................................9

           iii.   Dr. Strut's Interrogatory No. 9 ..................................................................9

III.    TO THE EXTENT THAT PLAINTIFFS PROVIDED RESPONSES TO
        DEFENDANTS'   INTERROGATORIES,   THOSE   RESPONSES   ARE
        INSUFFICIENT OR SIMPLY NOT CREDIBLE ...................................................10

        A. Plaintiffs' mere reassertion of the allegations in their Complaint are not a proper
           response to interrogatories seeking an identification of the basis for those
           allegations ...........................................................................................................10

        B. Plaintiffs' responses which identify absolutely every patient, date of service,
           service performed, claim submitted, or other category of relevant information as
           being fraudulent or otherwise improper are not credible .....................................11

IV.   DEFENDANTS BELIEVE PLAINTIFFS ARE WITHHOLDING DOCUMENTS AND INFORMATION RELEVANT TO THE ALLEGED DISCOVERY OF FRAUD BASED ON AN IMPROPER ASSERTION OF EXPERT PRIVILEGE AND WORK PRODUCT PROTECTION ....................................................................................12

    A.   Nothing prior to the alleged discovery of fraud "shortly before" bringing the Complaint could be protected because Plaintiffs did not anticipate litigation ......14

    B.   Plaintiffs' employees cannot be considered non-testifying experts .....................14

    C.   GEICO's investigations cannot be protected as work product because they did in fact occur within the ordinary course of business ..................................................15

V.    PLAINTIFFS' GENERAL PRACTICES REGARDING REVIEW OF CLAIMS AND INVESTIGATIONS OF FRAUD, AS WELL AS PLAINTIFFS' REPORTS TO OR COMMUNICATIONS WITH NEW YORK STATE AGENCIES, ARE RELEVANT TO THE PRESENT ACTION ..................................................................................17

    A.   Dr. Strut's Interrogatory No. 11 ...........................................................................18

    B.   Request for Documents No. 11 ..............................................................................18

    C.   Request for Documents Nos. 19 and 20 ................................................................19

VI.   PLAINTIFFS' OBJECTIONS TO INTERROGATORIES THEY CLAIM "IMPROPERLY SEEK AN EXTENDED NARRATIVE" HAVE NO LEGAL BASIS ....................................................................................................................20

VII.  PLAINTIFFS' GENERAL OBJECTIONS, AS WELL AS PLAINTIFFS'OBJECTIONS AS TO VAGUENESS, BREADTH, AND BURDEN ARE INSUFFICIENT AS THEY DO NOT SET FORTH ANY APPLICATION OF THE PRINCIPLES OF THE OBJECTIONS TO THE FACTS OF THE MATTER  20

    A.   Plaintiffs' general objections ................................................................................20

    B.   Plaintiffs' objections as to vagueness, breadth, and burden .................................21

VIII. PLAINTIFFS MUST PROVIDE PROPER RESPONSES TO INTERROGATORIESWHICH, WHILE CONTAINING TYPOGRAPHICAL ERRORS, COULD HAVE BEEN REASONABLY INTERPRETED AND WHICH HAVE BEEN CLARIFIED IN SUBSEQUENT DISCUSSIONS ............................21

IX.   PLAINTIFFS' REMAINING OBJECTIONS ...........................................................22

    A.   Dr. Strut's Interrogatory No. 9 .............................................................................22

B.  RES's Interrogatory No. 14  .....................................................................................22

C.  Defendants' Document Request No. 14 ............................................................23

CONCLUSION...............................................................................................................23

PRAYER FOR RELIEF...................................................................................................24

## TABLE OF AUTHORITIES

### FEDERAL RULES OF CIVIL PROCEDURE

F.R.C.P. R. 9 ...............................................................................................................23

F.R.C.P. R. 11 ................................................................................................................6

F.R.C.P. R. 26 ..............................................................................................................15

F.R.C.P.R. 26(b)(3) ...............................................................................................14, 16

F.R.C.P.R. 26(b)(4) ......................................................................................................14

F.R.C.P. R. 26(b)(4)(D) ................................................................................................14

F.R.C.P. R. 26(b)(5) .....................................................................................................17

F.R.C.P. R. 33(a)(2)...................................................................................................5,6

F.R.C.P. R. 33(b)(4) .....................................................................................................21

F.R.C.P. R. 33(d) ........................................................................................................7,8

F.R.C.P.R. 34(b) ...........................................................................................................20

F.R.C.P. R. 34(b)(2)(B) ...........................................................................................20, 21

F.R.C.P.R. 34(b)(2)(C) .................................................................................................20

F.R.C.P. R. 34(b)(2)(C) ................................................................................................12

F.R.C.P. R. 37(a) ............................................................................................................1

### STATE STATUTES

NYS Ins. L. § 405 .........................................................................................................16

NYS Ins. L. § 405(a) .....................................................................................................18

### STATE REGULATIONS

11 N.Y.C.R.R. §§ 86 .....................................................................................................16

## CASES

*American Ins. Co. v. Elgot Sales Corp.*, 1998 WL 647206 (S.D.N.Y. 1998) ................................17

*Bausch & Lomb Inc. v. Alcon Laboratories Inc.*, 173 F.R.D. 367 (W.D.N.Y. 1995) ...................6

*Cliffstar Corporation v. Sunsweet Growers*, 218 F.R.D. 65 (W.D.N.Y. 2003) ...........................11

*CRA Holdings US, Inc. v. U.S.*, 2018 AWL 4600220 (W.D.N.Y. 2018) ......................................8

*Dot Com Ent. Group, Inc. v. Cyberbingo Corp.*, 237 F.R.D. 43 (W.D.N.Y. 2008) .....................5

*EEOC v. Sterling Jewelers, Inc.*, 2012 WL 1680811 (W.D.N.Y. 2012) ........................................5

*Fingerhut ex rel. Fingerhut v. Chautauqua Institute Corp., Inc.*, 2013 WL 5923269
(W.D.N.Y. 2013) ........................................................................................................................15

*Fischer v. Forrest,* 2017 WL 773694 (S.D.N.Y. 2017) ...............................................................20

*Fox v. Poole*, 2007 WL 2572104 (W.D.N.Y. 2007) .....................................................................7

*Ice Cube Building LLC v. Scottsdale Ins. Co.*, 2019 WL 4643609 (D. Conn. 2019) ...................7

*In re Savitt/Adler Litigation*, 176 F.R.D. 44 (N.D.N.Y. 1997) .....................................................7

*JS v. Attica Cent. Schools*, 2008 WL 2986388 (W.D.N.Y. 2008) .........................................8, 10

*QBE Ins. Corp. v. Interstate Fire & Safety Equipment Co., Inc.*, 2011 WL 692982
(D. Conn. 2011) ........................................................................................................................14

*Snyder v. Winter*, 159 F.R.D. 14 (W.D.N.Y. 1994) .....................................................................16

*State Farm Mut. Auto. Ins. Co. v. 21st Century Pharmacy, Inc.*, 2020 WL 729775
(S.D.N.Y. 2020) ........................................................................................................................15

*U.S. v. Adlman*, 134 F.3d 1194 (2d Cir. 1998) ...........................................................................16

*U.S. v. Acquest Transit LLC*, 319 F.R.D. 83 (W.D.N.Y. 2017) ...................................................16

*U.S. v. Nysco Laboratories, Inc.*, 26 F.R.D. 159 (E.D.N.Y. 1960) ...............................................6

*Va. Elec. & Power Co. v. Sunshine Shipbuilding & Dry Dock Co.*, 68 F.R.D. 397
(E.D. Va. 1975) ........................................................................................................................14

*Weber v. Paduano*, 2003 WL 161340 (S.D.N.Y. 2003) ...............................................................17

*Wright v. Stern*, 2003 WL 136090 (S.D.N.Y. 2003) .......................................................7

## **SECONDARY SOURCES**

DISCPR § 504[E] ...........................................................................................14

Wright & Miller FPP § 2033 ............................................................................15

## PRELIMINARY STATEMENT

Plaintiffs and Defendants have spent the past several months exchanging discovery demands, compiling responses, and producing documents. The Scheduling Order in this matter is currently suspended, after having already once been extended, to accommodate discovery delays. [Dkt 67]. The Court established the necessity for rapid resolution of this action when it granted a preliminary injunction earlier this year. [*See* Dkt 30 at 21].

Plaintiffs brought an unverified complaint alleging the recent discovery of a massive fraudulent scheme. [Dkt 1]. They now refuse to produce information relevant to their claims. They improperly seek to conceal the records of their investigation and the identities of employees involved in the determination. They have refused to specifically identify the evidence to support the allegations in the unverified complaint, instead directing Defendants to review hundreds of thousands of pages of documents to determine what Plaintiffs may have referred to. Plaintiffs have improperly refused to answer interrogatories they have categorized as contention interrogatories. Where Plaintiffs have provided answers to interrogatories, they are in most cases woefully deficient and serve to cloud the issues rather than clarify them.

Full and proper responses to discovery are essential to resolution of this highly complex action. Plaintiffs should not be permitted to obfuscate the facts and slow down the discovery process. Defendants ask the Court to issue an order compelling full and proper responses to all of Defendants' Discovery Demands. [F.R.C.P. R. 37(a)].

## STATEMENT OF THE CASE

GEICO filed this Complaint against Dr. Strut, Dr. Hart, and RES on June 4, 2019, alleging that they had just discovered a broad and complicated scheme to defraud GEICO through claims for services rendered to GEICO-insured patients under New York State's no-fault system. [Dkt. 1]. This action bears great resemblance to one instituted in 2012 by GEICO against Dr. Strut and

RES, among others. GEICO seeks to reclaim benefits already paid to Defendants, as well as a declaratory judgment that GEICO has no liability to Defendants for other claims. [Dkt. 1 ¶¶ 1-2]. GEICO specifically alleges that certain services billed for were not provided to patients, were not medically necessary, or were submitted with improper billing codes. [Dkt. 1 ¶ 2]. GEICO also alleges that some services were provided by independent contractors and not RES and its employees. [Dkt. 1 ¶ 2].

Importantly, GEICO does not allege that Dr. Strut or Dr. Hart lack the required license to practice medicine and provide the services billed for, nor does GEICO allege that RES was not properly incorporated as a professional services corporation. [Dkt. 1]. GEICO alleges it was unaware of any fraudulent conduct until just before the suit was filed. [Dkt 1 ¶ 318].

Defendants moved to dismiss on July 10, 2019. [Dkt. 14].  On August 15, 2019 GEICO moved for an injunction staying any attempts by Defendants to collect on benefits owed through either arbitration or litigation as provided for by New York State law. [Dkt. 21]. On April 10, 2020, the Court denied Defendants' Motion to Dismiss and granted GEICO's Motion for Preliminary Injunction [Dkt. 45]. The Court issued a Case Management Order that same day which included a rapid discovery schedule. [Dkt. 45].

Defendants filed their Answer with Counterclaim on April 24, 2020 [Dkt. 52]. Plaintiffs filed an Answer to Defendants' Counterclaim on May 7, 2020. [Dkt. 59]. On May 8, 2020, the Court entered a Protective Order addressing confidential documents shared in discovery. [Dkt. 61].

On July 14, 2020 the parties submitted a Joint Motion to Extend the Case Management Order. [Dkt. 63]. The Court granted that Motion and issued a First Amended Scheduling Order on July 15, 2020. [Dkt. 65]. On October 19, 2020, facing significant issues as to proper discovery despite good faith efforts by all counsel, the parties submitted a Joint Motion to Suspend and

Amend the First Amended Scheduling Order. [Dkt 66]. The Court granted that Motion and suspended the First Amended Scheduling Order pending resolution of discovery motions. [Dkt 67].

## STATEMENT OF THE FACTS

On May 30, 2020 the Defendants served Plaintiffs with several discovery requests, including Defendants' First Request for Production of Documents, Defendant Strut's First Set of Interrogatories to Plaintiffs, Defendant Hart's First Set of Interrogatories to Plaintiffs, Defendant RES's First Set of Interrogatories to Plaintiffs, and Notices of Deposition directed to each individual plaintiff. [Ex. A].

Responses to the discovery requests, other than the Notices of Deposition, were due within 30 days. Defendants granted Plaintiffs an extension as a courtesy, and Plaintiffs served their written responses on July 15, 2020. [Ex. B-E]. Plaintiffs produced responsive documents digitally between September 15, 2020 and September 21, 2020 and supplemented that production on October 30, 2020. [Declaration of Knoer]. Defendants have reviewed the responses and have determined they are drastically deficient.

As laid out with specific detail in Defendants' letter of November 3, 2020 [Ex. F] and incorporated herein, Plaintiffs' responses are improper, insufficient, and incomplete. Defendants refer the Court to Plaintiffs' Response to Defendants' First Request for Production of Documents [Ex. B], Plaintiffs' Response to Defendant Hart's First Set of Interrogatories [Ex. C], Plaintiffs' Response to Defendant RES's First Set of Interrogatories [Ex. D], and Plaintiffs' Response to Defendant Strut's First Set of Interrogatories [Ex. E] for a full and complete recitation of Plaintiffs' improper, insufficient, and incomplete responses.

## SUMMARY OF THE ARGUMENT

Plaintiffs brought this lawsuit and must be prepared to fully comply with discovery. Plaintiffs seek to delay answering essential interrogatories by terming them "contention interrogatories." The interrogatories are not properly termed such, and even if the Court could permit Plaintiffs to delay answering, it should not because Plaintiffs have not established any reason for such a delay which would serve to prolong this litigation.

Plaintiffs also seek to limit their answers to certain interrogatories by directing Defendants to business records rather than providing written responses. This is improper because the burden of review would not be equal for both parties since Plaintiffs have already reviewed those records and made specific references to documents within the allegations in their Complaint. Where Plaintiffs have provided written answers, those answers are insufficient and lack credibility and do not indicate a serious attempt to provide a proper response that serves the goals of discovery.

Defendants believe that Plaintiffs have refused to provide information and documents under improper claims of work product or non-testifying expert protections. Plaintiffs cannot conceal the identities of its employees and the documents created within its ordinary course of business, which includes investigations into potential or suspected fraud.

Plaintiffs' counsel has indicated that Plaintiffs did not make any reports of suspected fraud to the New York State Department of Financial Services, as required by law, during the period relevant to this action. Plaintiffs have refused to produce any documents discussing the duty or ability to make such reports, based on a claim of relevance. Documents related to that failure are highly relevant to the issue of reliance. Also relevant to reliance are interrogatory answers related to Plaintiffs' practices for review and investigation of claims, which Plaintiffs

have refused to provide.

Plaintiffs make various other unsupported objections to interrogatories and document requests, which lack legal basis or otherwise lack merit. Plaintiffs must provide full and proper discovery responses.

## ARGUMENT

## I.   DEFENDANTS' INTERROGATORIES ARE NOT IMPROPER AND PLAINTIFFS MUST PROVIDE LEGITIMATE RESPONSES

Plaintiffs assert that Dr. Hart's Interrogatories Nos. 2-13 and RES's Interrogatories Nos. 1-14 and 16-24 are contention interrogatories and "improperly require[] GEICO to exhaustively state facts prior to the conclusion of discovery." [Ex. C]. There is nothing "improper" about these interrogatories; "an interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law." F.R.C.P. R. 33(a)(2).

These interrogatories invariably direct Plaintiffs to specific allegations made in their Complaint and ask that they identify the evidentiary basis for those allegations, often either documents referenced in the Complaint or the names of individuals who made conclusions as to fraud. [Ex. A]. "Questions seeking the identification of witnesses or documents are not contention interrogatories." *EEOC v. Sterling Jewelers, Inc.*, 2012 WL 1680811 at *8 (W.D.N.Y. 2012). An interrogatory requesting that a party state the facts which support a claim does not "involve an opinion or contention that relates to fact or the application of law to fact." *Dot Com Ent. Group, Inc. v. Cyberbingo Corp.*, 237 F.R.D. 43, 44 (W.D.N.Y. 2008). Plaintiffs' mischaracterize these interrogatories in order to avoid actually identifying any evidence to support their allegations, just as their Complaint and motion practice relied on unsubstantiated claims of statistical unlikelihood rather than documentary evidence, witness testimony, or expert opinion.

### A. If any of Defendants' interrogatories are in fact contention interrogatories, the Court should not allow Plaintiffs to defer answering those interrogatories.

Plaintiffs are incorrect in their assertion that a party is not obligated to respond to contention interrogatories at the beginning of discovery. While a court has the power to allow a party to delay its answers to contention interrogatories, a party is only relieved of its obligation to timely respond if so ordered by the Court. *See* F.R.C.P. R. 33(a)(2). There is no undue burden to Plaintiffs in identifying the basis for their Complaint; F.R.C.P. R. 11 requires the party to have a good-faith belief that its claims are viable, so the underlying facts must be known to Plaintiffs. *Dot Com Ent. Group* at 44. When a plaintiff brings a complaint, it must be prepared to comply with reasonable discovery requests. *Bausch & Lomb Inc. v. Alcon Laboratories Inc.*, 173 F.R.D. 367, 375 (W.D.N.Y. 1995). The identification of persons or documents which give rise to the allegations in the complaint is certainly reasonable. *See* id.

Plaintiffs allege fraud, based on unsubstantiated claims of statistical improbability and medical impossibility. The essential evidentiary questions in this case are medical: the actual conditions of the patients, the findings made by medical experts, and the propriety of the treatments provided and billed for by Defendants. *See U.S. v. Nysco Laboratories, Inc.*, 26 F.R.D. 159, 162 (E.D.N.Y. 1960) (noting that where "the resolution of the entire case depends upon medical and expert testimony and opinion…" a producing party should answer interrogatories seeking medical or scientific facts in that party's possession). The other key issue is reliance: how Plaintiffs analyzed the claim documents as they were received, and how and when they came to the conclusions that form the basis of the Complaint. Plaintiffs must specifically identify the documents and internal opinions they have relied on in making payment decisions and the allegations contained in the Complaint so that Defendants can depose Plaintiffs' representatives on the medical condition, fraud, and reliance issues and properly defend against the allegations.

## II.   PLAINTIFFS MAY NOT RELY ON RULE 33(d) AND MUST PRODUCE WRITTEN RESPONSES TO DEFENDANTS' INTERROGATORIES

Subject to their other objections, Plaintiffs have responded to Dr. Hart's Interrogatories Nos. 2, 3, 6, 7, 12, and 13, and to RES's Interrogatories Nos. 12, 12, 22, and 24 by simply directing Defendants to GEICO's claims files.[1] [Ex. C; Ex. D]. These claims files each contain thousands of pages of documents from Defendants, from patients' attorneys, from other medical providers, and from GEICO. [Declaration of Knoer]. These are complex medical records which require expert interpretation and analysis, not simple spreadsheets or lists.

To the extent that Plaintiffs have properly characterized any of the interrogatories as contention interrogatories, it is not appropriate to rely on F.R.C.P. R. 33(d). *See In re Savitt/Adler Litigation*, 176 F.R.D. 44, 50 (N.D.N.Y. 1997) (finding that Rule 33(d) is not appropriate for answering contention interrogatories). Reliance on Rule 33(d) is further inappropriate due to the vast number of pages involved, most of which were not text-searchable upon receipt. *See Wright v. Stern*, 2003 WL 136090 at *2 (S.D.N.Y. 2003) (holding that Rule 33(d) is not satisfied where a party "refer[s] in general terms to several thousand pages of documents"); cf. *Ice Cube Building LLC v. Scottsdale Ins. Co.*, 2019 WL 4643609 at *2 (D. Conn. 2019) (finding Rule 33(d) satisfied where producing party identified the range of documents by bates number and provided those documents in a text-searchable format). In general, reference to a patient's entire medical record is not sufficient, and the producing party should specify what parts of the record are responsive. *See Fox v. Poole*, 2007 WL 2572104 at *5 (W.D.N.Y. 2007).

---

[1] Plaintiffs also directed Defendants to their Special Investigation Unit (SIU) files in response to Dr. Hart's and RES's interrogatories. However, Plaintiffs have since advised that there are no SIU files associated with any of the claims that are the subject of their Complaint. [Declaration of Knoer].

A.    **Plaintiffs may not rely on Rule 33(d) because the burden of review is not substantially the same for both parties.**

GEICO's response does not satisfy the requirements of Rule 33(d). The rule only permits an answer by reference to records where the burden of review would be substantially the same for either party. F.R.C.P.R. 33(d). The burden to Plaintiffs is inherently lesser because Plaintiffs assumably have already reviewed these records in forming the basis for their complaint. As the Western District has said, to argue otherwise:

> "…ignores the fact that Plaintiffs impliedly know the answers, and that Defendant is, in effect, being invited to determine what they are, and to base subsequent decisions regarding this litigation on such a determination including preparation for trial. The purpose of Defendant's interrogatories is not to place on Defendant the burden to make such determinations, at their peril; rather, it is to require Plaintiffs to state unambiguously what such facts are."

*JS v. Attica Cent. Schools*, 2008 WL 2986388 at *4 (W.D.N.Y. 2008).

Because Plaintiffs have already reviewed these documents and understand the basis for their allegations, requiring Defendants to undergo the same analysis would create unnecessary work and an unnecessary delay which is not in the best interest of the Court or of the parties, especially since rapid resolution of the case is necessary to mitigate the harm to Defendants arising from the stay of arbitration, and the case has already required two extensions of the discovery schedule. *See CRA Holdings US, Inc. v. U.S.*, 2018 AWL 4600220 (W.D.N.Y. 2018).

i.    Dr. Hart's Interrogatory No. 2

For example, Dr. Hart's Interrogatory No. 2 asked Plaintiffs to identify which portions of police reports or hospital records they allege contradict either the initial examination results, patient histories, or range of motion tests of patients "in a large number of instances," "oftentimes," or "frequently." [Ex. C; Dkt 1 at ¶¶ 90, 92, 114, 115]. To glean this information by review of the patient files would require Defendants to go through each of the over 900 patients' files, pull out

all potentially relevant documents, and engage employees or contractors with medical expertise to analyze the documents to identify potentially contradictory data. Presumably, Plaintiffs already know the information they based their allegations upon and referenced in the Complaint.

As the *JS v. Attica Cent. School* court also noted it is essential that Plaintiffs affirmatively identify the specific documents or portions of documents that they used to make the allegations. *JS* at *4. It is not enough even if Defendants could identify which of the over one million documents GEICO *might* have referred to; Defendants have requested identification of those documents GEICO actually did refer to, and which GEICO believes support their claims. That cannot be discerned by a review of the entire file. Counsel for Defendants has reviewed a number of individual patients' files at random and have not discovered any sort of internal reports, notes, or communications which identify specific documents. [Declaration of Knoer]. GEICO essentially asks Defendants to review the patients' medical histories and come to an alternate diagnosis.

ii.      Dr. Hart's Interrogatory No. 7

Similarly, Dr. Hart's Interrogatory No. 7 asked Plaintiffs to identify every group of two or more patients who presented "on or about the same date after their accidents with substantially similar symptomatology." [Ex. C; Dkt 1 ¶¶ 121-24]. Plaintiffs have not defined "substantially similar symptomatology" or a range for "about the same date." The range of symptomatology among relevant patients is already narrow because all suffer from unmanaged pain resulting from automobile accidents. Even if Defendants were to reorganize the patient files chronologically it would be impossible to determine just which patients Plaintiffs referred to in the Complaint.

iii.      Dr. Strut's Interrogatory No. 9

Dr. Strut's Interrogatory No. 9 asked Plaintiffs to identify any patient who has suggested that the services that Defendants submitted claims for either were not necessary, improperly

rendered, or not actually provided. [Ex. E]. Plaintiffs referred Defendants to the claims files and to SIU files (before clarifying that no relevant SIU files exist). [Id.]. Initial review of claims files has not yielded any such assertions by any patients, but hundreds of thousands of pages remain. [Declaration of Knoer].

Defendants' expert found no evidence of any patient asserting they were not treated or were treated inappropriately. [Dkt 26-3 at ¶ 74]. If such patients exist, Plaintiffs must identify them by name as requested, or otherwise affirmatively state in response to the interrogatory that no individual GEICO insured has ever made such a suggestion. Requiring Defendants to review hundreds of thousands of pages of documents to confirm that answer presents an undue burden and an unnecessary delay to resolution of this case.

## III. TO THE EXTENT THAT PLAINTIFFS PROVIDED RESPONSES TO DEFENDANTS' INTERROGATORIES, THOSE RESPONSES ARE INSUFFICIENT OR SIMPLY NOT CREDIBLE

### A. Plaintiffs' mere reassertion of the allegations in their Complaint are not a proper response to interrogatories seeking an identification of the basis for those allegations

In response to RES's Interrogatories Nos. 2, 4, and 11, Plaintiffs assert that the interrogatories can be answered by reference to the allegations in the Complaint. [Ex. D]. Similarly, responses to Dr. Hart's Interrogatories Nos. 4 and 5, seeking the basis for certain referenced allegations, essentially restate the basis provided in the Complaint—statistics (without support of a statistician) and general medical principals (without support of a medical expert, and in continued conflict with the affidavit of Dr. Carinci). [Ex. C; see Dkt. 26-3]. This is improper and insufficient. "The function of an interrogatory in federal civil practice is to 'disclose the evidentiary basis' of a claim. *J.S.* at * 4 (citing *Dot Com Entertainment Group, Inc. v. The Cyberbingo Corporation*, 237 F.R.D. 43, 45 (W.D.N.Y. 2006)). "It is well-established that a

requesting party may seek through discovery, to ascertain the factual basis for a requested party's allegations." *Cliffstar Corporation v. Sunsweet Growers*, 218 F.R.D. 65, 71 (W.D.N.Y. 2003) (citing *Gary Plastic Packaging Corp. v. Merill Lynch, Inc.*, 756 F.2d 230, 236 (2d Cir. 1985) (noting that discovery is intended to enable parties to obtain the factual information needed for trial). A mere restatement of the allegations in the Complaint is not a good-faith response to an interrogatory and does not fulfill the purpose of interrogatories in federal practice, nor does Plaintiffs' reiteration of their layman's arguments as to statistics and medical principles.

### B. Plaintiffs' responses which identify absolutely every patient, date of service, service performed, claim submitted, or other category of relevant information as being fraudulent or otherwise improper are not credible

In response to Dr. Hart's Interrogatories Nos. 10, 12, and 13, and RES's Interrogatories Nos. 12, 22, and 24, Plaintiffs provide responses that are overly broad and simply not credible. [Ex. C; Ex. D]. GEICO's responses assert that:

    i.   "all of the HCFA-1500 forms and treatment reports [submitted by Defendants] contained deliberate falsehoods or misrepresentations";
    ii.   "all of Defendants' soft tissue injury 'diagnoses' were phony";
    iii.   no follow-up examination was ever medically necessary or performed to treat or otherwise benefit patients;
    iv.   no treatment provided by Defendants was ever medically necessary or appropriate;
    v.   every claim submitted included misrepresentations and exaggerations of the level and type of services provided; and
    vi.   no services were ever charged in accordance with the worker's compensation fee schedule.

These responses do not suggest any real inquiry was undertaken by Plaintiffs to provide accurate information. Dr. Hart's Interrogatories Nos. 10, 12, and 13 referenced specific paragraphs in the complaint where Plaintiffs alleged fraudulent conduct "routinely," "frequently," "virtually always" or "in virtually every case." [Ex. C; Dkt 1 at ¶¶ 75, 101-03, 113, 142, 146-47, 163-64, 175, 177, 178, and 179]. Plaintiffs now contend that their allegations are true in each and every

case. This strains credibility. Further, it conflicts with the arbitrations held prior to the issuance of the stay. Not only have arbitrators determined that the vast majority of Defendants' claims were proper and their treatments medically necessary and appropriate, but GEICO did not challenge every treatment, every service, every diagnosis, or every follow-up examination. [See Dkt 26-3, Affidavit of Dr. Carinci; Dkt 26-12, Sample of Arbitration Awards].

Plaintiffs base their allegations on probability and statistics without any reference to an expert statistical analysis or mathematical basis. Defendants respond that it is improbable—to the point of statistical impossibility—that not one treatment or follow-up examination was ever medically necessary or appropriate, that not one soft tissue diagnosis was accurate, that not one claim or HCFA-1500 form or treatment report was ever submitted without fraudulent statements, or that not one service was ever charged in accordance with the fee schedule. Especially since GEICO cannot identify one GEICO insured who has complained about the Defendants' treatments, nor did GEICO report Defendants to the authorities.

These responses are consistent with Plaintiffs' approach to this litigation, alleging some overarching and pervasive scheme that has infected absolutely everything that Defendants do and that has made Defendants ineligible to be reimbursed for any services performed since November of 2017. That is not the case. More importantly, Plaintiffs have not set out any basis in law for making such a broad finding. Plaintiffs' assertions of fraud must be proven on a claim-by claim basis. Plaintiffs' interrogatory responses indicate that Plaintiffs are not prepared to do so.

## IV.   DEFENDANTS BELIEVE PLAINTIFFS ARE WITHHOLDING DOCUMENTS AND INFORMATION RELEVANT TO THE ALLEGED DISCOVERY OF FRAUD BASED ON AN IMPROPER ASSERTION OF EXPERT PRIVILEGE AND WORK PRODUCT PROCTECTION

Plaintiffs, in accordance with F.R.C.P. R. 34(b)(2)(C), have stated that "to the extent GEICO responded to Defendants' Document Requests by indicating that it would produce

relevant, non-privileged documents, we have not withheld any documents." [Ex. H]. This statement would apply to Defendants' Requests for Documents Nos. 2 and 4-8 which sought internal correspondence and documents related to opinions on potential fraud. [Ex. B].

Review of the discovery produced thus far has uncovered only one document responsive to these requests: an email thread from December of 2017 and January of 2018 discussing claims relevant to the prior litigation between the parties. It strains credibility to claim that there exists absolutely no documentation of any assertion or suspicion of fraud, or any internal discussion of Defendants' current practices, in the two and a half year period prior to filing the Complaint.

Plaintiffs have repeatedly asserted that they are not required to disclose the identities of individuals who reviewed the claims at issue and concluded that they were fraudulent, in response to Defendants' Requests for Documents Nos. 2-8 and 14-16, Dr. Strut's Interrogatories Nos. 1-7, Dr. Hart's Interrogatories Nos. 4, 5, 8, 9, and 13, and RES's Interrogatory No. 13. [Ex. B; Ex. C; Ex. D; Ex. E]. Responding to Defendants' objections to Plaintiffs' claims of expert privilege, Plaintiffs stated that "to the extent GEICO employees reviewed claims in the ordinary course of business, those individuals are identified in the claims file and investigative files, which GEICO has already produced." [Ex. H].

The investigative files produced are dated prior to the relevant time period identified in the Complaint and are not relevant to any of the claims at issue in this matter. [Declaration of Knoer]. Based on review thus far, the claims files include the names of claims managers who signed correspondence to insureds and to medical providers, but do not include any assertions of fraud. [Id.]. Defendants believe that if Plaintiffs did in fact discover an alleged fraud, there must be some documentation. It is Defendants' belief that Plaintiffs have employed an unreasonably and

improperly narrow definition of "ordinary course of business" in order to conceal relevant information from discovery.

**A. Nothing prior to the alleged discovery of fraud "shortly before" bringing the Complaint could be protected because Plaintiffs did not anticipate litigation.**

Both the identities of individuals who Plaintiffs may seek to term non-testifying experts under R. 26(b)(4), and any documents created by those individuals claimed to be work product under R. 26(b)(3), can only be protected if they meet the standard of "in anticipation of litigation." *See QBE Ins. Corp. v. Interstate Fire & Safety Equipment Co., Inc.*, 2011 WL 692982 at *5 (D. Conn. 2011) (noting that because both subsections use identical language, the phrase should be interpreted as having the same meaning in each). As Plaintiffs have asserted that GEICO did not discover fraud until "shortly before it filed [the] Complaint" neither of these protections could apply to any individuals who analyzed claims or any documents created prior to that discovery "shortly before" June of 2019. [Dkt 1 ¶ 318]. Anything related to the initial discovery or suspicion that Defendants were allegedly committing fraud, and any further inquiry prior to Plaintiffs forming a belief that litigation was a legitimate possibility, would not be protected.

**B. Plaintiffs' employees cannot be considered non-testifying experts**

Even after Plaintiffs began working "in anticipation of litigation" the identities of their employees are not protected under R. 26(b)(4). That restriction applies only to non-testifying experts "…who ha[ve] been retained or specially employed by another party in anticipation of litigation or to prepare for trial…" F.R.C.P. R. 26(b)(4)(D). Plaintiffs' employees are employed in the general course of business, not specially employed in anticipation of litigation. "Retained means an expert hired as an independent contractor, and specially employed means an expert hired as a temporary export for the case. Regular employees of a party are not explicitly retained or special employees…" Haydock & Herr *Discovery Practice* § 5.04[E] (8th ed.), citing *Va. Elec. &*

*Power Co. v. Sunshine Shipbuilding & Dry Dock Co.*, 68 F.R.D. 397, 407 (E.D. Va. 1975); *see also* Wright & Miller 8A *Fed. Prac. & Proc. Civ.* § 2033 (3d ed.) (also stating that a party's employees are not protected from discovery). "Subdivision (b)(4)(B) deals with an expert who has been retained or specially employed by the party in anticipation of litigation or preparation for trial <u>(thus excluding an expert who is simply a general employee of the party not specially employed on the case)</u>…" F.R.C.P. R. 26 Notes of Advisory Committee on Rules – 1970 Amendment (emphasis added). While outside experts may have been brought in later, logically there must have been a GEICO employee or employees whose work lead to GEICO hiring outside experts in anticipation of litigation.

### C. GEICO's investigations cannot be protected as work product because they did in fact occur within the ordinary course of business.

Work product protection does not cover the investigation that lead GEICO to their conclusion that claims should not have been covered because they were allegedly fraudulent. "Courts frequently presume that investigative reports prepared by or for an insurer prior to a coverage decision are prepared in the ordinary course of the insurer's business and are not afforded work-product protection." *Fingerhut ex rel. Fingerhut v. Chautauqua Institute Corp., Inc.*, 2013 WL 5923269 at *3 (W.D.N.Y. 2013) quoting *OneBeacon Ins. Co. v. Forman Int'l, Ltd.,* 2006 WL 3771010 at *5 (S.D.N.Y. 2006). Preliminary investigations by the dedicated investigatory departments of a no-fault insurer, which occur in the ordinary course of business, are not undertaken "in anticipation of litigation." *State Farm Mut. Auto. Ins. Co. v. 21st Century Pharmacy, Inc.*, 2020 WL 729775 at *2 (S.D.N.Y. 2020). Any investigation by Plaintiffs to determine *whether* any claims submitted by Defendants were fraudulent should be treated as relevant to a coverage decision, not potential litigation. Only after Plaintiffs developed a belief of fraud, that claims should not have been paid, and that litigation was an option, did the investigation become one

15

made "in anticipation of litigation." *Id.* (noting that the protection does not apply before the insurer has "formed a specific intent to transform those investigations into litigation").

Analyzing insurance transactions for potential fraud, and investigating suspect transactions or parties, is within the ordinary course of business for an insurer. In fact, it is a statutory and regulatory requirement that an insurer undertake such analysis and investigation. *See, e.g.,* NY Ins. L. § 405; 11 N.Y.C.R.R. §§ 86 et al. The Second Circuit has adopted a "because of" test for the "anticipation of litigation" question. *U.S. v. Adlman*, 134 F.3d 1194, 1203-04 (2d Cir. 1998). That formulation "withhold[s] protection from documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation. It is well established that work-product privilege does not apply to such documents." Id. "Materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation…are not under the qualified immunity provided by [Rule 26(b)(3)]." F.R.C.P.R. 26(b)(3), Notes of Advisory Committee on Rules – 1970 Amendment. While it is true that documents prepared for business purposes may still be protected, that is only if the documents would not have been prepared if there was no prospect of litigation. *U.S. v. Acquest Transit LLC*, 319 F.R.D. 83, 91 (W.D.N.Y. 2017). Insurers do not have a statutory mandate to litigate fraud, but they do have a mandate to screen claims, investigate suspected fraud, and make reports about suspected fraud and their investigatory activities. Therefore, documents associated with fraud investigations, including the initial suspicions of fraud, are not properly considered "work product" under Rule 26(b)(3). To the extent that any documents were created by non-attorneys, that material "is immune from discovery only where the material is prepared exclusively and in specific response to imminent litigation. The mere contingency that litigation may result does not give rise to the immunity." *Snyder v. Winter*, 159 F.R.D. 14, 15 (W.D.N.Y. 1994).

Limiting protection to work done outside of the "ordinary course of business" is especially important when the party is an insurer because "…without some limiting principle virtually the entirety of an insurance company's files would be exempt from discovery." *American Ins. Co. v. Elgot Sales Corp.*, 1998 WL 647206 (S.D.N.Y. 1998). "Thus, in the insurance context, it is particularly important that the party opposing production of the documents, on whom the burden of proof as to privilege rests, demonstrate by specific and competent evidence that the documents were created in anticipation of litigation." *Weber v. Paduano*, 2003 WL 161340 at *4 (S.D.N.Y. 2003).

Plaintiffs must produce documents and information that establish their alleged discovery and affirmatively establish that any documents or information they wish to withhold are protected and describe what is withheld in compliance with R. 26(b)(5). If in fact no such documents or information exist, Plaintiffs must provide a reasonable explanation as to how GEICO could have possibly made the allegations in its Complaint.

## V. PLAINTIFFS' GENERAL PRACTICES REGARDING REVIEW OF CLAIMS AND INVESTIGATIONS OF FRAUD, AS WELL AS PLAINTIFFS' REPORTS TO OR COMMUNICATIONS WITH NEW YORK STATE AGENCIES, ARE RELEVANT TO THE PRESENT ACTION

Plaintiffs have objected to Dr. Strut's Interrogatory No. 11, and Defendants' Requests for Documents Nos. 11, 19, and 21 as seeking information not relevant to the case at hand. [Ex. B; Ex. E]. The interrogatory sought a description of Plaintiffs' processes for investigating suspected fraud. [Ex. A]. The document requests sought copies of GEICO's annual special investigations unit report, documents or communications about GEICO's obligation to report suspected fraud, and documents or communications with New York State agencies about such reports. [Id.]. Defendants also requested copies of the suspected fraud reports. [Id.]. Plaintiffs stated they would turn over any such reports existing in GEICO's possession that were relevant and nonprivileged.

[Ex. B]. No reports from the relevant timeframe or associated with claims that are the subject of this litigation have been identified in thus far. [Declaration of Knoer].

By law, an insurer must report any claim suspected to be fraudulent within thirty days after determination that a transaction appears to be fraudulent. NYS Ins. L. § 405(a). All reports, and any communication or other document asserting that Plaintiffs could or should make such a report, or establishing that such a report was made, is relevant to the issue of reliance.

## A.  Dr. Strut's Interrogatory No. 11

The information about GEICO's processes sought in Dr. Strut's Interrogatory No. 11 is absolutely relevant to the case at hand. Reliance is a necessary element of Plaintiffs' fraud claims. Reliance is highly suspect in this matter based on the previous fraud allegations Plaintiffs have made against Dr. Strut. Defendants need to understand how Plaintiffs generally investigate suspected fraud, including suspected "fraudulent schemes" across a healthcare provider's entire practice. That information would be compared to Plaintiffs' response to Dr. Strut's Interrogatory No. 12 (which Plaintiffs refused to answer for vagueness), setting out any variation from that standard practice in Plaintiffs' investigation of Defendants. [Ex. E]. If Plaintiffs treated their investigation of Defendants any differently than they would generally treat an investigation into a suspected fraudulent practice, it may indicate a lack of actual reliance on the allegedly fraudulent documents, or a failure to undertake required or available investigatory steps.

## B.  Request for Documents No. 11

Defendants' Request for Documents No. 11 sought copies of GEICO's Annual SIU Reports from 2010 to the present. [Ex. A]. These reports are required by the New York State Department of Financial Services and set out the number and dollar amount of suspicious claims, including "claims identified in the claims settlement process containing indicators of fraud or that

provide information indicating a pattern or trend of questionable organized activity," as well as statistics on the number of investigations opened and closed by the special investigation unit. *See* Instructions for Submission of the Annual SIU Report, http://dfs.ny.gov/apps_and_licensing/insurance_companies/annual_siu_report_instructions (last visited Nov. 5, 2020).

These reports are relevant to the big picture of Plaintiffs' investigatory activities and will reflect Plaintiffs' investigations of Defendants prior to the 2017 settlement, after the 2017 settlement, and after the supposed "discovery" of fraud in 2019.

### C.  Request for Documents Nos. 19 and 20

Defendants' Request for Documents No. 19 sought documents and any communications, internally or with third parties, regarding the ability or obligation to report suspected fraudulent claims to the Department of Financial Services. Defendants' Request for Documents No. 20 sought documents and any communications with New York State agencies regarding any such reports.

Defendants also sought copies of the actual reports at Request for Documents No. 18. [Ex. B]. Plaintiffs have stated that all such reports have been produced. [Ex. H]. None of those reports were made during the relevant period. This makes the other two document requests that much more important. Plaintiffs alleged in June of 2019 that hundreds of claims were fraudulent. [Dkt 1]. By law, Plaintiffs were required to report those suspicions within 30 days, meaning no later than July 6, 2020. If Plaintiffs are not complying with these reporting requirements, it raises a whole host of questions as to Plaintiffs' reliance and the propriety of Plaintiffs' conduct in bringing this litigation seeking not only to avoid paying claims, but to recover punitive damages that would not be available had Plaintiffs uncovered and avoided an alleged fraudulent scheme through the no-fault system. *See* Dkt 14-2 at 9, Dkt 25 at 8 (discussing GEICO's "RICO Trap").

## VI.   PLAINTIFFS' OBJECTIONS TO INTERROGATORIES THEY CLAIM "IMPROPERLY SEEK AN EXTENDED NARRATIVE" HAVE NO LEGAL BASIS

Dr. Strut's Interrogatories Nos. 10 and 11 sought an explanation of the process by which Plaintiffs receive a claim for reimbursement, analyze it, and determine whether it should be paid in full, paid in part, and/or investigated for fraud. [Ex. E]. These are Plaintiffs' essential functions in the business relationship between Plaintiffs and Defendants. Plaintiffs allege that they were defrauded based on false statements made in connection with claims submitted by Defendants. [Dkt 1]. Plaintiffs could only be defrauded if they in fact relied upon false statements. Such reliance would have occurred within that process of analysis and determination. It is essential that Plaintiffs lay out this process so that Defendants can understand whether and how Plaintiffs actually relied upon any statements which could later be found to be false.

Plaintiffs object, without any legal basis, that these interrogatories are improper because they "seek an extended narrative description of a very broad and inchoate topic." [Ex. E]. The Western District has not recognized this as a proper objection to an interrogatory.

## VII.   PLAINTIFFS' GENERAL OBJECTIONS, AS WELL AS PLAINTIFFS' OBJECTIONS AS TO VAGUENESS, BREADTH, AND BURDEN ARE INSUFFICIENT AS THEY DO NOT SET FORTH ANY APPLICATION OF THE PRINCIPLES OF THE OBJECTIONS TO THE FACTS OF THE MATTER

### A.   Plaintiffs' general objections

Plaintiffs asserted general objections to Defendants' First Request for Documents and to each of the individual Defendants' Interrogatories. [Ex. B; Ex. C; Ex. D; Ex. E]. Such general objections are not compliant with Rule 34(b) and must be struck. "[I]incorporating all of the General Objections into each response violates Rule 34(b)(2)(B)'s specificity requirement as well as Rule 34(b)(2)(C)'s requirement to indicate whether any responsive materials are withheld on the basis of an objection." *Fischer v. Forrest,* 2017 WL 773694 at *3 (S.D.N.Y. 2017).

### B.     Plaintiffs' objections as to vagueness, breadth, and burden

Plaintiffs objected to Dr. Hart's Interrogatories Nos. 4, 5, 6, 8, 9, 12, and 13, Dr. Strut's Interrogatories Nos. 1-11, RES's Interrogatories Nos. 1-12, 14, and 17, and Defendants Document Requests Nos. 1, 13, 19, and 21 as "vague," "overbroad," "overly broad," and/or "unduly burdensome." [Ex. B; Ex. C; Ex. D; Ex. E]. Plaintiffs offer no support for these objections and do not explain why any interrogatory or document request is in fact "vague," "overbroad," "overly broad," or "unduly burdensome," nor do they offer a reasonable interpretation or propose a limited response which would be acceptably narrowed and less burdensome. [Id.].

Plaintiffs' objections as to vagueness, breadth, and burden do not give Defendants any basis upon which to determine whether they are reasonable and valid. They do not comply with the requirement that objections be stated with specificity.  *See* F.R.C.P. R. 33(b)(4) ("the grounds for objecting to an interrogatory must be stated with specificity'); *see* F.R.C.P. R. 34(b)(2)(B) (if any requested document will not be produced, objecting party must "state with specificity the grounds for objecting to the request, including the reasons"). These objections are stated only nominally and are not actually substantiated, and therefore must be struck.

### VIII.  PLAINTIFFS MUST PROVIDE PROPER RESPONSES TO INTERROGATORIES WHICH, WHILE CONTAINING TYPOGRAPHICAL ERRORS, COULD HAVE BEEN REASONABLY INTERPRETED AND WHICH HAVE BEEN CLARIFIED IN SUBSEQUENT DISCUSSIONS

Dr. Strut's Interrogatory No 12 and RES's Interrogatory No. 17 referenced earlier interrogatories but had typographical errors which rendered the references irrelevant. Dr. Strut's Interrogatory No. 12 mistakenly referred to Dr. Strut's Interrogatories Nos. 9 and 10 when it should have referred to Dr. Strut's Interrogatories Nos. 10 and 11. Similarly, RES's Interrogatory No. 17 mistakenly referred to RES's Interrogatory No. 13 when it should have referred to RES's Interrogatory No. 16. Plaintiffs objected to these interrogatories as vague.

21

Defendants note that, in context, a producing party could have reasonably discovered the error. Regardless, Defendants have clarified the interrogatories and Plaintiffs must provide responses.

## IX.   PLAINTIFFS' REMAINING OBJECTIONS

Plaintiffs' remaining objections are without merit and should be struck.

### A.    Dr. Strut's Interrogatory No. 9

In response to Dr. Strut's Interrogatory No. 9, Plaintiffs state "GEICO further objects to this Interrogatory to the extent it suggests that Defendants actually rendered any legitimate medical services to GEICO insureds." This is substantive argument and not a proper objection to an interrogatory. Further, it is in conflict with GEICO's determinations to pay some claims in part and to deny certain claims on whole or in part without asserting a lack of medical necessity.

### B.    RES's Interrogatory No. 14

In response to RES's Interrogatory No. 14, Plaintiffs state "GEICO further objects to this Interrogatory as vague and unduly burdensome, inasmuch as Defendants have not identified 'every claim which is a subject of Defendant RES's counterclaim." [Ex. D].

Defendant RES's counterclaim seeks payment of all outstanding claims submitted to GEICO under no-fault and not yet paid. [Dkt 52 ¶¶ 380-385]. In answering that counterclaim, Plaintiffs asserted an affirmative defense based on RES's "fail[ures] to comply with the terms and conditions of the insurance policies under which the claims have been submitted." [Dkt 59 ¶ 18]. RES's Interrogatory No. 14 asked Plaintiffs to identify such "fail[ures] to comply." [Ex. A].

The subject claims were sufficiently identified in Defendant RES's counterclaim as all claims submitted to GEICO and not yet paid. [Dkt 52 ¶ 383-385]. Plaintiffs did not assert any confusion or vagueness in their answer to the counterclaim and must have established an

understanding of the claims at issue in order to assert the affirmative defenses with a reasonable belief as to their validity in compliance with Rule 9. [Dkt 59; F.R.C.P. R. 9]. Plaintiffs are obligated to respond to the interrogatory based on their reasonable understanding of its scope. The objection should be struck and Plaintiffs ordered to respond.

### C.   Defendants' Document Request No. 14

In response to Defendants' Document Request No. 14, Plaintiffs state "GEICO further objects to this request to the extent that it purports to require GEICO to produce documents other than as they are maintained in the ordinary course of GEICO's business." [Ex. B]. The request sought "copies of Plaintiffs' Special Investigation Unit or similar department or division complete physical and digital file regarding any investigation of each or all of the Defendants." [Ex. A]. Plaintiffs have not explained why this request for "copies of [the] complete physical and digital file regarding any investigation of each or all of the Defendants" could possibly require production of documents other than as they are maintained in the ordinary course of business. The request seeks copies of the files exactly as they are maintained. This objection should be struck.

### CONCLUSION

Plaintiffs brought this action asserting a wide-reaching fraudulent scheme which was allegedly discovered after review of claims associated with hundreds of patients. Plaintiffs must comply with the Court's directions for rapid resolution of the matter by providing full written responses to interrogatories at this time, not at the conclusion of the discovery period; by providing relevant information and documentation related to the supposed discovery of the alleged scheme; and by providing written answers to interrogatories based on the exhaustive review already performed by Plaintiffs rather than requiring Defendants to waste time and resources in repeating that same work. To the extent that Plaintiffs have asserted any legitimate

objections to Defendants' Discovery Demands, Plaintiffs must provide a privilege log and fully substantiate their objections as required by the Federal Rules of Civil Procedure. Any remaining baseless, irrelevant, or unsupported objections must be struck.

## PRAYER FOR RELIEF

WHEREAS, Defendants respectfully request that the Court grant an Order:

a.    Directing Plaintiffs to fully respond to all interrogatories, including any interrogatories previously objected to as "contention interrogatories";

b.    Directing Plaintiffs to provide written responses to Dr. Hart's Interrogatories Nos. 2, 3, 6, 7, 12, and 13 and RES's Interrogatories Nos. 12, 12, 22, and 24;

c.    Directing Plaintiffs to provide written responses to Dr. Hart's Interrogatories Nos. 4, 5, 8, 9, 12, and 13, Dr. Strut's Interrogatories Nos. 1, 2, 3, 4, 5, 6, and 7, and RES's Interrogatory No. 13 identifying all responsive GEICO employees and any responsive contractors employed prior to GEICO's determination of fraud;

d.    Directing Plaintiffs to produce any documents that were withheld in response to Defendants' Requests for Documents Nos. 2, 3, 4, 5, 6, 7, 8, 14, 15, and 16 on the basis of expert privilege which were created prior to GEICO's determination of fraud, created in the ordinary course of business or pursuant to statutory or regulatory requirements, and/or created by non-attorneys not exclusively and in specific response to imminent litigation, and, if no documents responsive to any or all of the referenced requests exist, directing Plaintiffs to supplement their written responses to affirmatively state that no responsive documents exist;

e.    Directing Plaintiffs to provide full and proper responses to Dr. Hart's Interrogatories Nos. 1, 5, 10 and 13 and RES's Interrogatories Nos. 2, 4, 7, 9, 11,

12, 22, and 24 which reflect actual specific inquiry and do not merely restate allegations as made in the Complaint;

f.   Directing Plaintiffs to respond to Dr. Strut's Interrogatories Nos. 10, 11, and 12, and RES's Interrogatories Nos. 14 and 17;

g.   Directing Plaintiffs to produce a full privilege log, subject to the parties' stipulation;

h.   Striking Plaintiffs' objection to Dr. Strut's Interrogatory No. 9 as to "…the extent it suggests that Defendants actually rendered any legitimate medical services to GEICO insureds";

i.   Striking Plaintiffs' objection to Defendants' Document Request No. 14 as to "…the extent that it purports to required GEICO to produce documents other than as they are maintained in the ordinary course of GEICO's business"; and

j.   Directing Plaintiffs to properly substantiate any and all remaining objections in compliance with Rule 34(b)(2)(B) and Rule 34(b)(2)(C).

Dated:  Buffalo, New York
        November 6, 2020

_s/Colin M. Knoer_
Colin M. Knoer, Esq.
Robert E. Knoer, Esq.
THE KNOER GROUP, PLLC
*Attorneys for Defendants*
424 Main Street, Suite 1820
Buffalo, New York 14202
Phone: (716) 332-0032
Fax: (716) 362-8748
cknoer@knoergroup.com
rknoer@knoergroup.com

TO:   Barry I. Levy, Esq.
      Ryan Goldberg, Esq.
      Max Gershenoff, Esq.
      Joshua D. Smith, Esq.
      RIVKIN RADLER LLP
      *Attorneys for Plaintiffs*
      926 RXR Plaza
      Uniondale, New York 11556
      (516) 357-3000
      barry.levy@rivkin.com
      ryan.goldberg@rivkin.com
      max.gershenoff@rivkin.com