UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GOVERNMENT EMPLOYEES INS. CO., et al.,

                                    Plaintiffs,                    **19-CV-728-JLS-HBS**

          v.                                                       **Order**

MIKHAIL STRUT, M.D., et al.,

                                    Defendants.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b).  Dkt. No. 15.  Presently before the Court is Defendants' motion to compel.  Dkt. No. 68.  Plaintiffs oppose the motion, Dkt. No. 70, and Defendants have filed their reply.  Dkt. No. 71.  The matter is therefore fully briefed.  For the reasons that follow, Defendants' motion is GRANTED IN PART, to the extent set forth herein.

## DISCUSSION

Plaintiffs—Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Ins. Co., and GEICO Casualty Co.—are a set of interrelated insurance entities.  They provide automobile insurance to New York residents.  Defendants are two medical doctors, Mikhail Strut and Cherlye Hart, and the entity through which they bill and seek reimbursement, RES Physical Medicine & Rehabilitation Services, P.C. ("RES").

Plaintiffs brought this action alleging that Defendants "wrongfully obtained [more than $1,650,000] . . . by submitting, and causing to be submitted, thousands of fraudulent [] charges relating to medically unnecessary, illusory, and otherwise non-reimbursable healthcare services" under New York's no-fault automobile insurance laws.  Dkt. No. 1 at 1-2.  Specifically, Plaintiffs assert that

Defendants falsified treatment notes, misrepresented patient diagnoses and symptoms, and otherwise engaged in a fraudulent scheme to justify unnecessary bills they submitted for reimbursement. Plaintiffs raise a variety of claims, including civil RICO and common law fraud. *See id.* at 107-14. Defendant RES has filed a counterclaim seeking reimbursement for unpaid claims it alleges were properly submitted. *See* Dkt. No. 52 at 34-35.

In its motion to compel, Defendants ask that Plaintiffs be ordered to more fully and specifically respond to their interrogatories and document requests. Plaintiffs raise several generally applicable objections to the disputed requests. The Court examines each objection in turn.

## I.   Rule 33(d)

Plaintiffs declined to provide specific, detailed responses to many of Defendants' interrogatories on the basis of Federal Rule of Civil Procedure 33(d). That rule, titled "Option to Produce Business Records," provides:

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d)(1)-(2).

Plaintiffs take the position that, in accordance with Rule 33(d), Defendants could just as easily answer their own interrogatories by reviewing Plaintiffs' records, and, therefore, they did not need to provide exhaustive, detailed responses to the interrogatories.

By way of illustration, one of Plaintiffs' theories is that fraud may be inferred from the fact that Defendants employed "boilerplate" language in their treatment notes for patients. To investigate Plaintiffs' claim, defendant Hart requested that Plaintiffs identify "by patient, claim, document, and page number each example of boilerplate and identical findings" in Defendants' treatment notes. Dkt. No. 68-5 at 5. Plaintiffs responded that the answer to that question could be "discerned from a review of GEICO's no-fault claims files," and Defendants should be responsible for conducting that review. *Id.* Plaintiffs provide this same answer throughout their interrogatory responses.

The Court agrees with Defendants that Plaintiffs' reliance on Rule 33(d) is inappropriate under the circumstances. "Rule 33 production is suited to those discovery requests requiring a compilation or analysis, accomplished as easily by one party as another, or where neither side has clear superiority of knowledge or familiarity with the documents. Accordingly, Rule 33 is well-suited to reply to inquiries of an intensely objective nature." *Xchange Telecom Corp. v. Sprint Spectrum L.P.*, No. 14-CV-54, 2015 WL 773752, at *5 (N.D.N.Y. Feb. 24, 2015). However, "Rule 33 is not appropriate where interrogatories pose questions of fact or mixed questions of law and fact [which] require the exercise of particular knowledge and judgment on the part of the responding party." *Id.* (internal quotation marks omitted).

In this case, Defendants' inquiries required Plaintiffs to exercise their own judgment and knowledge to identify which records and evidence are, in *their* view, relevant to their claims and defenses. Only Plaintiffs can identify which language they believe is "boilerplate," which diagnoses they believe are false, which treatments they believe were unnecessary, and which treatment protocols they believe are "contravened by" the contemporaneous accident reports. These are not simply

issues of objective fact that Defendants are equally capable of discovering by reviewing the relevant records; Defendants' interrogatories required Plaintiffs "to make a legal judgment about which facts support the contention[s] and how they do so," *This, LLC v. Jaccard Corp.*, No. 15-CV-1606, 2017 WL 547902, at *3 n.3 (D. Conn. Feb. 9, 2017).  Rule 33(d) may not be invoked in such circumstances. *See id.*

In addition, the complaint suggests that Plaintiffs have already thoroughly reviewed the relevant records for the errors, misrepresentations, and falsities that Defendants ask Plaintiffs to identify: in the complaint, Plaintiffs lay out numerous examples of misrepresentations in Defendants' treatment notes, and claim that such examples are "representative" of all disputed claims.  *See, e.g.*, Dkt. No. 1 at 59.  If true, that puts Plaintiffs in a substantially better position to answer the interrogatories.  *See* Fed. R. Civ. P. 33(d) (stating that rule may be invoked only if "the burden of deriving or ascertaining the answer will be substantially the same for either party").

For these reasons, Plaintiffs may not rely on Rule 33(d) to avoid fully responding to Defendants' interrogatories.

Moving forward, the Court expects that Plaintiffs will provide *full*, *specific*, *detailed*, and *complete* responses to each of Defendants' disputed interrogatories.  Plaintiffs' previous strategy in answering interrogatories—directing Defendants to the allegations in the complaint or to GEICO's "claims files" generally—is inconsistent with their responsibility to answer each interrogatory "separately and fully."  Fed. R. Civ. P. 33(b)(3); *see also Robbins & Myers, Inc. v. J.M. Huber Corp.*, No. 01-CV-201, 2003 WL 21384304, at *5 n.24 (W.D.N.Y. May 9, 2003) ("[D]irecting the opposing party to an undifferentiated mass of records is not a suitable response to a legitimate request for discovery.").

4

Although Plaintiffs reject the notion that they could be required to "identify *every* misrepresentation contained within *every* document of *every* patient file," Dkt. No. 70 at 8, that is exactly what this Court is requiring them to do.[1]  Defendants are entitled to understand and investigate Plaintiffs' claims in their full scope.  *See Xchange*, 2015 WL 773752, at *2 ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.").

The Court recognizes that Plaintiffs undoubtedly face a burdensome task, as the parties estimate that they have already exchanged 1.5 million documents, and there are nearly eighteen thousand fraudulent charges identified in the complaint.  But neither side has suggested that the task of identifying and cataloguing all of the information from which Plaintiffs infer fraud—allegedly, hundreds of misrepresentations, errors, falsities, and boilerplate phrases amongst the records—is unnecessary or irrelevant.  The burden is simply a function of the nature of Plaintiffs' claims and the breadth of the fraudulent activity they are alleging.  Plus, as noted above, any burden is lessened by the fact that Plaintiffs claim to have already reviewed the relevant records and catalogued the relevant information to such a degree that they can identify "representative samples" of instances of misrepresentation, falsity, and fraud.  *See, e.g.*, Dkt. No. 1 at 3, 21, 28, 32, 40.

In short, Plaintiffs cannot invoke Rule 33(d) to avoid providing full responses to Defendants' interrogatories.  When they respond to Defendants' interrogatories or document requests, Plaintiffs must do so fully, completely, and in detail.

---

[1] Thus, Plaintiffs may not respond to an inquiry seeking a list of every allegedly false statement or representation simply by stating that all of Defendants' treatment notes "contained deliberate falsehoods and misrepresentations, as detailed in the Complaint."  Dkt. No. 68-5 at 12.  Plaintiffs must instead identify every putative misrepresentation in every document, as requested.

## II.    Contention Interrogatories

Plaintiffs also objected to many of Defendants' interrogatories on the ground that they were contention interrogatories. "Contention interrogatories" are inquiries used to "discovery the theory of the responding party's case" and the "factual basis underlying its substantive legal claims." *Sheehy v. Ridge Tool Co.*, No. 05-CV-1614, 2007 WL 1020742, at *1 (D. Conn. Apr. 2, 2007).   In their responses, Plaintiffs asserted that they were under no obligation to "exhaustively state facts prior to the conclusion of discovery." Dkt. No. 68-5 at 5.  Thus, for example, Plaintiffs refused to specifically identify every patient whom they believed Defendants gave false diagnoses. *See* Dkt. No. 68-5 at 13.

Plaintiffs' objection misses the mark.  A contention interrogatory is a "perfectly acceptable form of discovery." *Harnage v. S. Barrone*, No. 15-CV-1035, 2017 WL 3448543, at * 7 (D. Conn. Aug. 11, 2017).  Under Rule 33(a)(2), an interrogatory "is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact," though a court has the discretion to order "that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." Fed. R. Civ. P. 33(a)(2).  The purpose of that discretion is to protect "the responding party from being hemmed into fixing [its] position without adequate information." *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, No. 11-CV-3677, 2012 WL 7997611, at *1 (E.D.N.Y. Sept. 7, 2012).

Therefore, there is nothing inherently objectionable about a contention interrogatory, even if it is tendered early in discovery.  The Court has the discretion to order that such interrogatories be deferred until later in the discovery process, but there must be an articulable basis for such relief. *See Scope of Interrogatories—Opinions, Contentions, and Conclusions*, 8B Fed. Prac. & Proc. Civ. § 2167 (3d ed.)

(stating that the court's power "to protect a party from being tied down before he has had an opportunity fully to explore the case" should "not be exercised automatically but should be reserved for 'appropriate cases'").

As an initial matter, the Court detects some inconsistency in Plaintiffs' arguments on this issue. On the one hand, Plaintiffs argue that they should not be required to "exhaustively state facts prior to the conclusion of discovery," which implies that they believe there may be more facts to uncover and that their theories may shift over the course of discovery.  Dkt. No. 68-5 at 5.  On the other hand, Plaintiffs assert that the grounds for their claims, and the universe of relevant facts, are so defined and obvious that Defendants can readily ascertain the information they request simply by reviewing Plaintiffs' claims files.  *See id.*

Regardless, the only basis Plaintiffs meaningfully articulate for deferring their answers is that some interrogatories seek information that relates to expert opinions, which are better addressed during expert discovery.  To that limited extent, the Court agrees.  If any interrogatory seeks a response that calls for the identity of an expert or the expert's opinion, Plaintiffs may defer their answer until they have identified their experts and proffered expert reports in accordance with the pretrial order.  At that time, Plaintiffs will be responsible for supplementing their interrogatory responses to fill in those gaps.

However, most of the disputed interrogatories do not call for responses that venture into the realm of expert discovery.  Rather, Defendants seek to understand the basic factual underpinnings of Plaintiffs' claims—*e.g.*, *which* diagnoses do Plaintiffs believe are false, *which* patients had those allegedly false diagnoses, and *which* documents pertain to each false diagnosis and patient.  If an

interrogatory could be construed to solicit the underlying medical theory or methodology, Plaintiffs may respond that they will supplement their responses during expert discovery. But, beyond that narrow exemption, Plaintiffs fail to articulate any reason why it would be unfair to fully identify the factual bases for their claims at this time. Of course, to the extent Plaintiffs need to correct or supplement their interrogatory responses based on information subsequently learned through discovery, they can (and must) do so in accordance with Rule 26(e).

Accordingly, except in the narrow respect discussed herein, Plaintiffs may not refuse to answer the interrogatories on the basis that they are contention interrogatories.[2]

## III.    Materials Protected from Disclosure

In many of their discovery requests, Defendants seek to uncover when and how Plaintiffs discovered the allegedly fraudulent activity. This is because Defendants theorize that Plaintiffs may have set what Defendants call a "RICO trap," whereby an insurer "knowingly allows insureds to get treatment from providers and then, after a backlog of claims for reimbursement piles up, launches a federal court attack on those providers with the threat of treble damages, punitive damages, and legal fees." Dkt. No. 71 at 14 n.3.

In their opposition brief, Plaintiffs do not dispute that such requests solicit discoverable information and materials, but they argue that the requests may in part solicit information that is

---

[2] Plaintiffs sometimes refused to respond to certain interrogatories on the ground that they were contention interrogatories, and other times on the basis that they called for "a legal opinion and conclusion." *See, e.g.*, Dkt. No. 68-6 at 14. However phrased, Plaintiffs' objection lacks merit. Interrogatories may properly solicit "responses which contain mixed questions of law and fact," so long as they do not "involve a statement of pure law." *Sheehy*, 2007 WL 1020742, at *1. For example, Defendants are permitted to ask Plaintiffs for the basis of their contention that Defendants are ineligible for reimbursement under New York law. *See* Dkt. No. 68-6 at 14.

protected from disclosure, including privileged communications, work product, and information from consulting experts.  *See* Dkt. No. 70 at 11.

One example will suffice.  In Strut's first interrogatory, he asked Plaintiffs to identify "each individual who has, at GEICO's request or direction, reviewed information and/or documents related to the medical treatment referenced in the complaint provided to GEICO insureds by Defendants." Dkt. No. 68-7 at 4.  Among other objections, Plaintiffs objected that the inquiry "seeks to discover information protected by the attorney-client privilege and/or work product doctrine and seeks to discover information that constitutes material prepared in anticipation of litigation."  *Id.* Plaintiffs also stated that responsive "non-privileged information sought through this Interrogatory may be discerned from a review of GEICO's no-fault claims files and special investigations unit files."  *Id.* at 5.  Despite invoking protection from disclosure, there is no indication in the record that Plaintiffs provided a privilege log that "describe[d] the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected, [would] enable [Defendants] to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A)(ii).

As this illustrative response demonstrates, even if Plaintiffs are correct that some of the requested information was protected from disclosure, Plaintiffs failed to (1) provide full and detailed responses related to non-protected information and materials, or (2) tender a privilege log, as required by Rule 26(b)(5).  As the Court already pointed out above, Plaintiffs cannot meet their burden of responding to Defendants' interrogatories by vaguely referencing a mass of documents.   If Defendants ask Plaintiffs to identify which employees reviewed the claims, Plaintiffs must do so fully,

unless the information is protected from disclosure. But Plaintiffs may only claim such protection from disclosure if they prepare and tender a privilege log that conforms to Rule 26(b)(5)(A), which they did not do. *See* Fed. R. Civ. P. 26(b)(5)(A) (describing what a party "must" do when it withholds otherwise discoverable information "by claiming that the information is privileged or subject to protection as trial-preparation material").

Absent a detailed privilege log, the Court cannot determine whether and to what extent Plaintiffs' claims of protection from disclosure are meritorious. Instead, the Court directs Plaintiffs to provide full, detailed, and complete responses to the disputed interrogatories and requests for production. If Plaintiffs wish to claim that some information or documents are protected from disclosure, they must provide a conforming privilege log. To the extent the parties continue to dispute whether certain information or materials should be disclosed, they may move for relief at that time. As it stands, the Court is not in a position to determine whether Plaintiffs' claims of protection are appropriate.

## IV.   Description of Plaintiffs' Practices for Fraud Investigations

In a few interrogatories, Defendants requested that Plaintiffs provide descriptions of their fraud detection and investigation practices, both generally and with respect to Defendants specifically. Plaintiffs refused to answer these interrogatories, finding them vague and overbroad. *See* Dkt. No. 68-7 at 13-14. Plaintiffs now claim that they will produce their claims manual, which they believe will "satisfy Defendants' concerns." Dkt. No. 70 at 12. Defendants indicate that they have not received the manual. Dkt. No. 71 at 15.

The Court directs Plaintiffs to provide the claims manual to Defendants. In addition, Plaintiffs shall provide a full, detailed explanation responsive to Strut's twelfth interrogatory, in which he asks Plaintiffs to "identify any deviations" from the normal claims process that occurred with respect to Defendants' bills. Dkt. No. 68-7 at 14. Plaintiffs initially responded that they did not understand the question, *see id.*, but the question is, in fact, obvious. Plaintiffs shall provide a full and complete response identifying any such deviations.

## V.   SIU Reports

Every year, Plaintiffs are required to send reports to New York's Department of Financial Services, known as SIU Reports, that detail suspicious claims received and investigated by insurers. Defendants requested all of Plaintiffs' SIU Reports from 2010 to present. *See* Dkt. No. 68-4 at 11. Defendants believe these reports are relevant because they provide "the big picture of Plaintiffs' investigatory activities and will reflect Plaintiffs' investigations of Defendants prior to the 2017 settlement, after the 2017 settlement, and after the supposed 'discovery' of fraud in 2019." Dkt. No. 68-2 at 26. In other words, these reports may be relevant to Defendants' "RICO trap" theory. In their opposition brief, Plaintiffs state, without elaboration, that "Defendants have not demonstrated any need or relevance for the requested materials."[3] Dkt. No. 70 at 12.

Without any developed contrary argument from Plaintiffs, the Court agrees with Defendants that the SIU Reports are relevant and must be disclosed. Therefore, Plaintiffs shall disclose to Defendants all SIU Reports from 2010 to present.

---

[3] Plaintiffs assert that Defendant did not meet and confer on this issue. Even if true, the Court would excuse that failure under the circumstances. *See Gropper v. David Ellis Real Estate, L.P.*, No. 13-CV-2068, 2014 WL 518234, at *2 (S.D.N.Y. Feb. 10, 2014) ("A failure to meet and confer may be excused when to do so would be futile.").

11

## VI.    Fraud Referrals

Under New York law, Plaintiffs are obliged to report insurance transactions they believe to be fraudulent to the Department of Financial Services.  *See, e.g.*, N.Y. Ins. L. § 405.  Defendants requested not only any formal reports Plaintiffs furnished regarding Defendants' activities, but also internal and external communications regarding the submission of such reports based on Defendants' alleged fraudulent activities.  *See* Dkt. No. 68-4 at 14-15.  Defendants believe such informal communications may be relevant to whether, instead of following the required protocols, Plaintiffs set a "RICO trap" in order to inflate their damages.  Dkt. No. 68-2 at 26.

Plaintiffs claim to have disclosed all formal reports, Dkt No. 70 at 12, but they do not indicate whether they have disclosed any of the informal communications Defendants requested (per document requests #19 and #21).  Again, Plaintiffs develop no argument to challenge the claimed relevance of these requests.  Therefore, Plaintiffs shall produce all documentation requested.  If Plaintiffs believe that some documentation is protected from disclosure, they must submit a privilege log, and otherwise produce all non-protected documents.  If no such documents exist, Plaintiffs shall, after a diligent investigation, provide Defendants with an affidavit or declaration from someone with knowledge stating as much.

## VII.    RES's Fourteenth Interrogatory

RES has filed a counterclaim against Plaintiffs seeking reimbursement for unpaid bills. Plaintiffs raised an affirmative defense that RES is not entitled to reimbursement because it failed to comply with the conditions of the applicable insurance policies.  *See* Dkt. No. 59 at 3; Dkt. No. 68-6 at 12. In its fourteenth interrogatory, RES asked Plaintiffs to identify, for "every claim which is a

subject of Defendant RES's counterclaim, each act or omission" which constituted a breach of the policies. Dkt. No. 68-6 at 12. Plaintiffs did not provide a responsive answer, stating in part that Defendant had not identified which bills are part of their counterclaim. *Id.*

The Court highlights the dispute over this interrogatory to emphasize the need for the parties to work together to resolve misunderstandings and avoid unnecessary motion practice. In a case as factually dense as this one, the discovery process will require that both sides take steps to fully and clearly articulate each inquiry and response.

To that end, for purposes of the fourteenth interrogatory, Defendants shall fully and clearly identify each bill that is the subject of the counterclaim, and Plaintiffs shall then provide a full and complete response, consistent with the standards discussed above.

## VIII.   General Objections

Defendants challenge Plaintiffs' use of general objections, like vagueness and overbreadth. *See* Dkt. No. 68-2 at 28. Plaintiffs respond that their objections were appropriate. Dkt. No. 70 at 12-14. The Court declines to address this dispute. Based on the Court's rulings above, Plaintiffs will be required to conduct a full overhaul of their answers to interrogatories and a full review of their document production thus far. By virtue of the Court's order, Plaintiffs' subsequent responses will undoubtedly be more thorough and complete than their initial responses, in which case Defendants' concern about the use of general objections may be moot. To the extent Plaintiffs' subsequent responses suffer from the same defects, Defendants may seek further relief.

## IX.   Summary

Because the parties' disputes cover so many of Defendants' interrogatories and document requests, it would be inefficient for the Court to go through each request and apply its rulings line by line.  In the preceding sections, the Court has laid out its position on the infirmities in Plaintiffs' responses, and, with that guidance, the Court presumes Plaintiffs will take the steps necessary to conform its responses to the Court's rulings.

Ultimately, the Court is ordering Plaintiffs to fully re-examine its responses to the interrogatories and document requests Defendants identified in their motion to compel.  As to interrogatories, Plaintiffs must provide full, detailed, and complete responses to each question.  Plaintiffs must identify every patient, every claim, every falsity, every misrepresentation, etc., as the case may be.  As to the disputed document requests, Plaintiffs shall conduct a diligent investigation to ensure that all requested documents are proffered.

To the extent Plaintiffs believe information or documents are protected from disclosure, they must provide a detailed privilege log, subject to the parties' stipulation.  To the extent Plaintiffs have no information or documents responsive to the request, they must tender an affidavit or declaration from someone with knowledge attesting to such.  If any request seeks information or documents related to expert opinions, Plaintiffs may defer that portion of their response until expert discovery begins, but Plaintiffs must otherwise fully and specifically respond to each request to the extent it does not pertain to expert opinion.

Within fourteen days of the date of entry of this Order, the parties shall submit their joint proposed amended scheduling order. The proposal shall include a deadline for Plaintiffs to amend and correct their deficient discovery responses.

## CONCLUSION

For the reasons stated above, Defendants' motion to compel (Dkt. No. 68) is GRANTED IN PART, as set forth herein. Within fourteen days of the date of entry of this Order, the parties shall submit their joint proposed amended scheduling order, which shall include a deadline for Plaintiffs to amend and correct their deficient discovery responses.

SO ORDERED.

*/s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: January 22, 2021

15